

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUNGARD RECOVERY SERVICES L.P., <br> a limited partnership, formerly known as <br> SunGard Recovery Services Inc. <br> 1285 Drummers Lane <br> Wayne, Pennsylvania 19087, <br><br>                    **Plaintiff,** <br><br>    v. <br><br> COMCAR INDUSTRIES, INC., <br> a Florida Corporation, <br> 502 E. Bridgers Avenue <br> Auburndale, Florida 33823, <br><br>                **Defendant.** | Civil Action No. $O2 - CV - 4444$ <br><br><br> FILED JUL 3 2002 |

## COMPLAINT

Plaintiff SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc., by and through its undersigned counsel, files this Complaint against Defendant Comcar Industries, Inc., and in support thereof avers as follows:

## THE PARTIES

1.    Plaintiff SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc. ("SunGard" or "Plaintiff"), is a limited partnership with its principal place of business located at 1285 Drummers Lane, Wayne, Pennsylvania 19087. The members of SunGard are SunGard Computer Services Inc., a Pennsylvania corporation with its principal place of business in Voorhees, New Jersey, and SunGard Partner L.L.C., a limited liability company. The sole member of SunGard Partner L.L.C. is SunGard Computer Services Inc.

2.      Defendant Comcar Industries, Inc. ("Comcar") is a Florida corporation with its principal place of business at 502 East Bridgers Avenue, Auburndale, Florida.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a)(2).

## FACTUAL BACKGROUND

**A.      The Recovery Services Agreement and its Amendments.**

5.      SunGard specializes in providing computer-related disaster recovery services. Such services enable a computer-dependent company to prepare for and maintain its operations during times of emergency, such as fire, flood or power loss. SunGard provides backup computer systems and establishes backup communications networks through which the customer can access the backup computer facility from various sites.

6.      Comcar is a nationwide trucking firm with five trucking divisions located across the United States. Through its various divisions, Comcar provides trucking services for its customers throughout the 48 contiguous United States, including the provision of trucking services in Pennsylvania and in this district.

7.      Effective May 1, 1999, SunGard, then known as SunGard Recovery Services Inc., and Comcar entered into a Recovery Services Agreement, a "Schedule A" and certain Addenda (collectively, the "Agreement") that identified the services selected by Comcar, the

initial monthly fees, and the initial term of commencing on May 1, 1999 and lasting 60 months. A true and accurate copy of the Agreement is attached hereto as Exhibit A.

8.     On or about January 1, 2001, through a statutory merger and consolidation, the Agreement was transferred by operation of law from SunGard Recovery Services Inc. to SunGard Recovery Services LP.

9.     Among the services SunGard agreed to provide Comcar in the event that it was rendered unable to use its own data processing equipment were the following:

- Assistance of SunGard's Support Staff consisting of systems software, telecommunications, operations and customer support personnel on an as needed basis whenever a Disaster is declared (id. at § A(3));

- Assistance during a disaster in obtaining and installing additional and/or replacement hardware (id.); and

- Access to SunGard's facilities for testing its disaster recovery capability (id. at § A(4)).

10.     In exchange for these services, Comcar agreed to pay SunGard Monthly Fees for the duration of the Agreement.

11.     The Agreement further provided for termination upon notice at the end of an Agreed Term:

> **Contract Term.**  This Agreement shall continue in effect for so long as there is a Schedule in effect.  The term of a Schedule, and Subscriber's rights to use the Recovery Services selected on that Schedule, shall begin on the Commencement Date and continue in effect for the Agreed Term stated in that Schedule. Thereafter, that Schedule shall automatically renew for successive renewal terms of equal duration to the Agreed Term, unless either party gives written notice of termination to the other at least three months before the end of the then current term.

Agreement at § D(1).

12.    The Agreement also provided the procedures for a termination for cause:

> If either party breaches any of its obligations under this Agreement in any material respect and the breach is not substantially cured within the cure period specified below, then the other party may terminate this Agreement or any Schedule(s), without penalty, by giving written notice to the breaching party at any time before the breach is substantially cured. With respect to a breach of SunGard's obligation to provide the Recovery Services to Subscriber during a Disaster, the cure period shall be five days. With respect to Subscriber's payment obligations, the cure period shall be ten days after receipt of SunGard's written notice of non-payment. With respect to all other obligations under this Agreement, the cure period shall be 30 days after receipt of written notice describing the breach, provided that, if a longer period is reasonably required to cure the breach and the cure is promptly begun, such cure period shall be extended for as long as the cure is being diligently prosecuted to completion.

Id. at § D(6).

13.    The Agreement further provided for future increases in the Monthly Fees:

> . . . Beginning one year after the Commencement Date of a Schedule, SunGard may increase all fees chargeable under that Schedule by up to 5% per contract year, by giving Subscriber at least 90 days prior written notice.

Id. at § D(2).

14.    The Agreement further set forth the manner in which the parties were required to provide written notice to each other:

> NOTICE. All notices, consents and other communications under this Agreement shall be in writing and shall be deemed to have been received on the earlier of the date of actual receipt or the third business day after being sent by first class mail. Any notice may be given by facsimile, and Disaster declaration notice may be given orally, provided that, in either case, a signed written confirmation is received within 24 hours thereafter. Subscriber's address for notice is stated in each

Schedule.  SunGard's address for notice is 1285 Drummers Lane, Wayne, Pennsylvania 19087, Attention:  Contract Administration.

Id. at § D(7).

15.    The parties further agreed that the Agreement "shall be governed by substantive Pennsylvania law."  Id. at § D(10).

16.    The Agreement further provided that "[i]n any action relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and court costs from the other party."  Id.

17.    In accordance with the Agreement, on several occasions SunGard provided written notice to Comcar regarding yearly increases in the Monthly Fees.

**B.    Comcar's Test of the Disaster Recovery Services.**

18.    In the fall of 1999, Comcar began planning for a test of its disaster recovery systems at SunGard's facilities in either Atlanta, Chicago or Philadelphia, Pennsylvania.

19.    In October 1999, Comcar's representatives visited SunGard's Chicago disaster recovery facility to conduct tests of the disaster recovery services provided under the Agreement.  The tests were designed to uncover and address any weaknesses in Comcar's disaster recovery plan so that any such problems could be addressed well in advance of an actual emergency.

20.    The tests uncovered certain weaknesses, including Comcar's failure to properly configure its own servers and Comcar's failure to create backup copies of key application software.

C.    <u>Comcar's Notice of Termination.</u>

21.    The last payment made by Comcar was on January 17, 2000.

22.    SunGard continued to issue monthly invoices to Comcar, but Comcar failed to pay those invoices without providing any explanation for its refusal to do so.

23.    Nearly a year after the October 1999 tests and nine months after it stopped paying any invoices, by letter dated September 18, 2000, Comcar's outside counsel, Billy R. Ready wrote to Carolyne Usherwood, an Administrative Assistant with SunGard's offices in Alpharetta, Georgia.  A true and accurate copy of the September 18, 2000 Letter is attached hereto as Exhibit B.  The text of the body of that letter stated as follows:

> This firm represents Comcar Industries, Inc.  Our client has advised that it is their opinion SunGard has failed to perform the significant functions scheduled for their recovery service.  The performance has been totally unsatisfactory.
>
> We, therefore, consider the contract null and void from its inception.

<u>Id</u>.  The September 18, 2000 Letter neither described the alleged breaches, nor gave any opportunity to cure any such breaches.

24.    By letter dated October 24, 2000, SunGard informed Comcar that its purported cancellation was not in compliance with the terms of the Agreement and that Comcar remained liable for Monthly Fees through the end of the current Term of the Agreement.  <u>See</u> October 24, 2000 Letter from Alice A. Deck to Billy R. Ready.  A true and accurate copy of the  October 24, 2000 Letter is attached hereto as Exhibit C.  As stated in that letter, SunGard took the position that if Comcar believed SunGard "has materially breached the Agreement, Comcar should notify SunGard in accordance with Section D.6 of

the Agreement" and that <u>if</u> a breach had occurred, then SunGard must be given "an opportunity to cure any alleged breach prior to Comcar's right to terminate the Agreement. <u>Id</u>.

25.    By letter dated November 17, 2000, Comcar responded to SunGard. <u>See</u> November 17, 2000 Letter from Billy R. Ready to Alice A. Deck. A true and accurate copy of the November 17, 2000 Letter is attached hereto as Exhibit D.

26.    In that letter, Comcar provided only vague statements about a purported failure to provide Comcar with "both hardware access and professional guidance," or "planning, guidance or onsite input." <u>Id</u>. Comcar also expressed dissatisfaction with unspecified alleged problems experienced during a test of the disaster recovery services. <u>Id</u>.

27.    Despite repeated demands from SunGard, Comcar refused to further specify the grounds for its position that SunGard had breached the Agreement, other than a restatement that SunGard "never provided any assistance or 'reasonable supplies and support'" or "necessary assistance, planning, guidance or onsite input from SunGard." <u>See</u>, <u>e.g.</u>, March 29, 2001 Letter from Billy R. Ready to Theodore J. Collins. A true and accurate copy of the March 29, 2001 Letter is attached hereto as Exhibit E.

28.    Again, Comcar's failure to specify the grounds for the alleged breach was accompanied by a refusal to provide any opportunity to cure, as Comcar took the position that "[a]ny cure period that might apply has certainly expired." <u>Id</u>.

C.    Comcar's Failure to Pay SunGard's Monthly Fees.

29.    Comcar was not entitled to terminate the Agreement under § D(1) except by three-months written notice effective upon the expiration of the Agreed Term in effect at the time.

30.    Further, Comcar was not entitled to terminate the Agreement under § D(6) in that it failed to give written notice describing any alleged breach in sufficient detail, nor did it provide any opportunity to cure any supposed breach.

31.    Under the terms of the Agreement, Comcar is required to pay SunGard Monthly Fees under for services through April 30, 2004.  Despite repeated demands from SunGard, Comcar has not made payments on its Monthly Fees since January 17, 2000.  The unpaid fees are calculated as follows:

| Time Period | Rate | No. of Months | Total |
|---|---|---|---|
| 01/01/00 – 04/30/00 | 13,512.00 | 4 | 54,048.00 |
| 05/01/00 – 04/30/01 | 14,188.00 | 12 | 170,256.00 |
| 05/01/01 – 04/30/02 | 14,897.00 | 12 | 178,764.00 |
| 05/01/02 – 04/30/03 | 15,642.00 | 12 | 187,704.00 |
| 05/01/03 – 04/30/04 | 16,424.00 | 12 | 197,088.00 |
| | | Total: | $787,860.00 |

## COUNT I - BREACH OF CONTRACT

32.    SunGard incorporates paragraphs 1 through 31 of the Complaint.

33.    As described herein, there is a valid and binding contract between SunGard and Comcar.

34.    SunGard has fulfilled and is ready, willing and able to continue to fulfill its obligations to Comcar under the Agreement.

35.    Comcar has breached the Agreement by failing to make prompt payment of its Monthly Fees as they accrue and refusing to pay future Monthly Fees as they become due and owing.

36.    SunGard has suffered damages as a direct result of Comcar's breach of the contract in an amount exceeding $787,860.00, plus interest, costs and attorney's fees.

WHEREFORE, SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc., requests that this Court enter judgment on Count I in its favor and against Comcar Industries, Inc., in the amount of $787,860.00, interest, costs, attorney's fees under the Agreement, and such other and further relief as may be just and proper.

## COUNT II - UNJUST ENRICHMENT

37.    SunGard incorporates paragraphs 1 through 31 of the Complaint.

38.    At all relevant times, SunGard provided and continues to provide backup capabilities and other services for Comcar that were set forth in the Agreement.

39.    Comcar received and continues to receive the benefit of SunGard's services throughout the course of the parties' dealings, and it is unconscionable for Comcar to reap these benefits without paying SunGard.

40.    By virtue of its conduct, Comcar has been and continues to be unjustly enriched at SunGard's expense in an amount exceeding $787,860.00, plus interest, costs and attorney's fees.

WHEREFORE, SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc. requests that this Court enter judgment on Count II in its favor and against Comcar Industries, Inc., in the amount of $787,860.00, plus interest, costs, attorney's fees under the Agreement, and such other and further relief as may be just and proper.

Dated: July 2, 2002

BLANK, ROME, COMISKY & McCAULEY LLP

_____
Laurence S. Shtasel, Esq.
Rebecca D. Ward, Esq.
One Logan Square
Philadelphia, PA 19103
Telephone:    (215) 569-5500
Facsimile:    (215) 569-5694

Attorneys for Plaintiff SunGard Recovery Services LP, formerly known as SunGard Recovery Services Inc.

090079.71121/21034814v1

EXHIBIT A

# RECOVERY SERVICES AGREEMENT

## BETWEEN

## SUNGARD RECOVERY SERVICES INC.
**a Pennsylvania corporation**
## ("SunGard")

## AND

## COMCAR Industries Incorporated

a _____ **Florida** _____ corporation
## ("Subscriber")

## DATED

## MAY 13    1999

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Agreement.

**SUNGARD RECOVERY SERVICES INC.**

By: _David A. Deckman_

Print: **DAVID A. DECKMAN**

Print Title: **SENIOR VICE PRESIDENT**

Date Signed: 5/26/99

**COMCAR Industries Incorporated**

By: _Merrill Y Forte Jr_

Print Name: _Merrill Y Forte Jr_

Print Title: _Sr Vice-President / CFO_

Date Signed: 5/18/99

**THE TERMS OF THIS AGREEMENT ARE CONFIDENTIAL.**

A. **RECOVERY SERVICES.** Each Schedule to this Agreement identifies a Subscriber location, the nature of services to be provided by SunGard to Subscriber for that Location ("Recovery Services"), the fees to be paid by Subscriber to SunGard for those services, and any other applicable terms. Each Schedule represents a separate contract between the parties that incorporates and is governed by all of the terms of this Agreement.

1. **DISASTER.** A "Disaster" is any unplanned event or condition that renders Subscriber unable to use a Location for its intended computer processing and related purposes. By signing a Schedule or any Addendum to a Schedule, Subscriber warrants that the Location specified in that Schedule is not at that time experiencing a Disaster. Subscriber may declare a Disaster by having one of its designated representatives give notice to SunGard stating that a Disaster occurred, identifying the affected Location, specifying which Recovery Services Subscriber believes will be required, and naming another designated representative whom SunGard may immediately contact to verify the Disaster.

2. **SELECTED SERVICES.** Whenever Subscriber declares a Disaster, the Recovery Services to be provided by SunGard to Subscriber shall be the following services which were selected by Subscriber in the applicable Schedule:

   (a) **Mobile Recovery Services.** Immediate and exclusive use of the services described below ("Mobile Recovery Services"), which Subscriber may use for the duration of a Disaster:

      (i) **Replacement Recovery System.** A fully operational, relocatable computer system and networking capability ("Replacement Recovery System"), equal to or better than (in all material respects including equipment quality and processing capacity) the Mobile Configuration described in the Schedule, to be provided to Subscriber by one of the following methods at Subscriber's option:

         a. **Primary Recovery Facility.** Access to the Replacement Recovery System at a SunGard facility where it is then installed.

         b. **Alternate Recovery Facility.** Delivery of the Replacement Recovery System to a SunGard facility where it may be accommodated, within 48 hours after SunGard receives the Disaster declaration notice.

         c. **Mobile Data Center.** Delivery of a properly equipped vehicle housing the Replacement Recovery System to a destination in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

         d. **Subscriber Facility.** Delivery of the Replacement Recovery System to a properly equipped facility located in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

      (ii) **Computer Space.** Environmentally prepared computer space ("Computer Space"), properly equipped to facilitate the installation of a computer system comparable to the Mobile Configuration, to be provided to Subscriber by one of the following methods at Subscriber's option:

         a. **SunGard Facility.** Access to the Computer Space at a SunGard facility where the Replacement Recovery System may be accommodated.

         b. **Mobile Coldsite.** Delivery of a properly equipped vehicle housing the Computer Space to a destination in the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

      (iii) **Supplemental Office Space.** An adequate and reasonable amount of office space in the same SunGard facility where the Replacement Recovery System or Computer Space is located, properly equipped to facilitate the installation of terminals, which Subscriber may use to operate that Replacement Recovery System or Computer Space.

      (iv) **Mobile Work Group Space.** Delivery of a vehicle properly equipped to accommodate the Mobile Work Group Configuration described in the Schedule, to a destination within the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

      (v) **Quick Ship Equipment.** Delivery of equipment equal to or better than (in all material respects including equipment quality and processing capacity) the Quick Ship Equipment described in the Schedule, to a properly equipped facility within the continental United States requested by Subscriber, within 48 hours after SunGard receives the Disaster declaration notice.

   (b) **Center-Based Recovery Services.** Immediate and exclusive use of the services described below ("Center-Based Recovery Services"), which Subscriber may use during the period of time stated below, provided at a SunGard facility:

      (i) **Work Group Space.** An adequate and reasonable amount of office space, properly equipped to accommodate the Work Group Configuration described in the Schedule, which Subscriber may use for six weeks.

      (ii) **MegaVoice℠.** SunGard's voice communications backup service for the number of communications ports stated in the Schedule, which Subscriber may use for six weeks.

3. **COMPREHENSIVE RECOVERY SUPPORT. Whenever Subscriber uses Recovery Services during a Disaster, SunGard's Support Staff (consisting of operations, communications, security, transportation, systems software and customer support personnel, as appropriate) shall provide comprehensive support to Subscriber on a 24-hour-a-day, 7-day-a-week basis, as needed.** To facilitate Subscriber's use of the Recovery Services during a Disaster, SunGard's Support Staff shall assist Subscriber in pre-testing Subscriber's operating systems and communications circuits, as appropriate. During a Disaster, SunGard's Support Staff also shall assist Subscriber in contacting vendors and in obtaining and installing additional or replacement equipment.

4. **TESTS.** Upon execution of this Agreement, SunGard will provide Subscriber with a computer based Workshop that is designed to provide Subscriber with an orientation to SunGard, general guidelines for defining reasonable Test objectives and recovery operations. Subscriber may use certain Recovery Services to test its disaster recovery capability ("Test") once per contract year for up to (3) Test Period(s) as stated in the applicable Schedule. Each Test Period entitles Subscriber to eight (8) hours of consecutive test time per contract year at a designated SunGard facility, on a non-cumulative basis. During each Test, SunGard's Support Staff shall provide reasonable supplies and support to Subscriber as needed, subject to availability. In order for SunGard to provide support to Subscriber for a scheduled Test, all Test plans must be provided to SunGard at least three (3) weeks prior to the Test date. Upon receipt of Subscriber's Test plan, SunGard will then assign a SunGard recovery specialist to review Subscriber's Test plan and act as project manager to coordinate Test support activities. Tests shall be scheduled at least four (4) months in advance and Test time availability is Monday 0800 through Friday 2400 hours. All Tests shall be subject to immediate cancellation or termination, and shall be rescheduled as soon as possible, if and when any other subscriber declares a disaster and requests use of the Recovery Services being tested.

5. **HOTLINE.** SunGard shall maintain a toll-free customer support telephone service, on a 24-hour-a-day, 7-day-a-week basis, which Subscriber may use as needed.

6. **USER'S GUIDES.** Subscriber shall receive SunGard's current User's Guides for the Recovery Services and all applicable updates and revisions, as and when issued.

7. **PLANNING SERVICES AND SOFTWARE.** Subscriber may engage SunGard's disaster recovery consultants, at SunGard's then prevailing fees, to prepare and maintain a disaster recovery plan for Subscriber, audit Subscriber's disaster recovery capability, and provide other disaster recovery planning and consulting services. Subscriber may license SunGard's disaster recovery planning software at SunGard's then prevailing fees.

8. **OTHER SERVICES.** Subscriber may obtain any other recovery services offered by SunGard, at SunGard's then prevailing fees, by executing an appropriate Schedule or Addendum describing such services.

2

**B. MAINTENANCE AND USE OF RECOVERY RESOURCES.** The terms of this Section B are intended to ensure that the facilities and equipment used by SunGard to provide the Recovery Resources ("Recovery Resources") are properly maintained and used, and to protect the respective interests of the parties in using the Recovery Resources.

1. **MAINTENANCE.** SunGard shall maintain vendor-specified proper operating environments at its facilities and in its vehicles used to provide the Recovery Services. SunGard shall adhere to vendor-recommended procedures and policies for proper maintenance of the Recovery Resources, including necessary remedial maintenance and regularly scheduled preventive maintenance. **SunGard warrants to Subscriber that the Recovery Resources shall be maintained in a state of readiness at all times, consistent with SunGard's obligations under this Agreement.**

2. **SIGNIFICANT CHANGES.** SunGard may change the Recovery Resources and shall give written notice to Subscriber at least sixty (60) days before making any significant change that might substantially and adversely impact Subscriber. Subscriber shall then have an adequate and reasonable number of free additional Test Periods to Test the affected Recovery Services. If, in Subscriber's reasonable judgment, any such change substantially and adversely impacts Subscriber to the extent that Subscriber cannot use the affected Recovery Services, then Subscriber may terminate the affected Recovery Services by giving written notice to SunGard within ten days after Subscriber first uses the affected Recovery Services for either a Disaster or Test.

3. **STANDARD PROCEDURES.** SunGard shall maintain reasonable and uniform rules regarding security, safety, scheduling, operations and other procedures for accessing and using the Recovery Resources during disasters and tests. These rules may appear in SunGard's User's Guides and in other written documents provided by SunGard to its subscribers from time to time. Both SunGard and Subscriber shall comply with these rules in all material respects and shall use all Recovery Resources in accordance with manufacturer specifications. Rules for tests may include advance scheduling and cancellation requirements. Any Test Periods canceled less than 45 days before the scheduled date will be applied against Subscribers annual allotment of Test Periods.

4. **MOBILE RESOURCES.** Title to all of the Recovery Resources used to provide Mobile Recovery Services ("Mobile Resources"), wherever located, shall remain in SunGard or its supplier, except for any Quick Ship Equipment as to which Subscriber properly exercises its purchase option, if any, described in the applicable Schedule. With respect to any Mobile Resources for which the destination is not a SunGard facility, (a) Subscriber shall obtain or provide, at Subscriber's expense, all permits, landlord consents and other authorizations, and all communications, power and other utility lines and equipment, needed to possess, locate, or use the Mobile Resources at their destination, (b) Subscriber shall be responsible for the security of the Mobile Resources at that destination, (c) Subscriber shall not relocate the Mobile Resources without SunGard's prior written consent which will not be unreasonably withheld, (d) when Subscriber's use or right to use the Mobile Resources during a Disaster or Test ends, Subscriber shall comply with SunGard's return delivery or shipment instructions, and (e) if the Mobile Resources do not include a SunGard vehicle, then Subscriber shall provide a proper operating environment for the Mobile Resources. If any Mobile Resources are provided by a third party under contract with SunGard and that contract is terminated, then SunGard may terminate the applicable Recovery Services upon 90 days prior written notice to Subscriber.

---

**C. MULTIPLE DISASTER.** Subscriber's rights of immediate and exclusive use of the Recovery Resources, as provided in Section A2, shall be subject to the possibility that one or more other subscribers ("other affected subscribers") could declare a disaster and require use of the same Recovery Resources at the same time as Subscriber ("Multiple Disaster").

1. **MULTIPLE DISASTER PROCEDURES FOR MOBILE RESOURCES.** If a Multiple Disaster occurs, then the following procedures shall be implemented with respect to Mobile Resources:

(a) The first subscriber who declares a disaster (as determined by SunGard's receipt of written disaster declaration notices) shall have immediate and exclusive use of the applicable Mobile Resources.

b) If the applicable Mobile Resources are being used by another affected subscriber who previously declared a disaster, then Subscriber shall be provided immediate and exclusive use of other compatible Mobile Resources.

(c) If all other compatible Mobile Resources also are being used by other affected subscribers who previously declared disasters, then Subscriber shall be provided exclusive use of the first compatible Mobile Resources that become available.

(d) Subscriber shall cooperate with SunGard and the other affected subscribers in coordinating the use of the Mobile Resources and in implementing any other plans for supporting the Multiple Disaster.

2. **GENERAL MULTIPLE DISASTER PROCEDURES.** If a Multiple Disaster occurs, then the following procedures shall be implemented with respect to all Recovery Resources other than Mobile Resources:

(a) Subscriber and the other affected subscribers shall have equal rights of access to and use of the applicable Recovery Resources, irrespective of the order in which disasters occurred or were declared.

(b) In an effort to avoid the need for shared or allocated use of any Recovery Resources, SunGard shall, to the fullest extent possible under the circumstances, take full advantage of, and provide access to, all of its other available Recovery Resources.

(c) If shared or allocated use of any Recovery Resources is necessary, then SunGard shall develop and implement an appropriate plan ("Multiple Disaster Plan") providing for the sharing or allocation of those Recovery Resources in a manner reasonably determined by SunGard. If Subscriber and the other affected subscribers unanimously agree upon their own Multiple Disaster Plan, then SunGard shall implement that plan to the fullest extent possible under the circumstances.

(d) Subscriber shall cooperate with SunGard and other affected subscribers in coordinating the use of the Recovery Resources and, if necessary, in implementing a Multiple Disaster Plan.

3. **MULTIPLE DISASTER PROTECTION.** To lower the probability of a Multiple Disaster, SunGard shall comply with the following terms:

(a) **No other subscriber shall be granted any greater rights of access to or use of the Recovery Resources than are granted to Subscriber under this Agreement.**

(b) **No agreement to provide use of any Recovery Resources shall be entered into at a time when the subscriber location to be serviced is then currently experiencing a disaster.**

4. **CRISIS MANAGEMENT.** Whenever SunGard learns of an approaching storm or other situation that might cause a Multiple Disaster, SunGard shall monitor the situation and use commercially reasonable efforts to coordinate contingency plans with all potentially affected subscribers.

3

D.  OTHER PROVISIONS

1.  **CONTRACT TERM.** This Agreement shall continue in effect for so long as there is a Schedule in effect. The term of a Schedule, and Subscriber's rights to use the Recovery Services selected on that Schedule, shall begin on the Commencement Date and continue in effect for the Agreed Term stated in that Schedule. Thereafter, that Schedule shall automatically renew for successive renewal terms of equal duration to the Agreed Term, unless either party gives written notice of termination to the other at least three months before the end of the then current term.

If Subscriber plans to convert its processing environment to a new processing environment, then at least 3 months before the conversion is complete, Subscriber will notify SunGard in writing of the new technology in reasonable detail and the expected date of conversion. SunGard will then notify Subscriber in writing if SunGard provides, or will provide by the conversion date, Recovery Services for the new technology, and the affected Schedule will continue in effect and the configuration will be changed, in a mutually acceptable manner, to include the new technology at SunGard's then prevailing Monthly Fees therefor. In the event that SunGard can not provide Recovery Services for the new technology, Subscriber may cancel the affected Schedule by giving written notice of cancellation accompanied by a payment equal to 10% of the Monthly Fees remaining between the effective date of cancellation and the date the Schedule would have otherwise expired.

2.  **FEES AND EXPENSES.** All Monthly Fees shall be invoiced by SunGard in advance. All other fees, and any out-of-pocket expenses reasonably incurred by SunGard on behalf of Subscriber and with prior authorization, shall be invoiced by SunGard as and when incurred. Subscriber's payments shall be due within 30 days after receipt of invoice. For any amount not paid when due, Subscriber will pay interest at the lesser of fifteen percent (15%) or the maximum amount permitted by law. In addition, Subscriber shall be responsible for all collection costs incurred by SunGard. Subscriber shall be responsible for (a) any applicable Disaster Fees as indicated on a Schedule, (b) all communications and similar third party charges resulting from Subscriber's use of the Recovery Resources, (c) all power, fuel and other utility charges resulting from Subscriber's use of the Recovery Resources, (d) all costs associated with the transportation, delivery, operation, and ongoing support of Mobile Resources used by Subscriber, (e) all costs associated with the installation and de-installation of Mobile Resources used by Subscriber at non-SunGard locations, and (f) any sales, use, excise or comparable taxes assessed or imposed upon the services provided or the amounts charged under this Agreement. Beginning one year after the Commencement Date of a Schedule, SunGard may increase all fees chargeable under that Schedule by up to 5% per contract year, by giving Subscriber at least 90 days prior written notice.

3.  **CONFIDENTIALITY.** All information disclosed by one party to the other in connection with this Agreement shall be treated as confidential information unless it is or becomes publicly available through no fault of the other party, is already known to the other party, or is later rightfully obtained by the other party from independent sources. Each party's confidential information shall be held in strict confidence by the other party, using the same standard of care as it uses to protect its own confidential information, and shall not be used or disclosed by the other party for any purpose except as necessary to implement or perform this Agreement. Without limiting the generality of the foregoing, such confidential information includes (a) Subscriber's data and software, and the details of Subscriber's computer operations and recovery procedures, which include trade secrets of Subscriber, (b) SunGard's physical security systems, access control systems, specialized recovery equipment and techniques, pricing and User's Guides, which include trade secrets of SunGard, and (c) the terms of this Agreement. This Section D3 may be enforced by injunction.

4.  **LIABILITY AND INDEMNIFICATION.** Each party ("liable party") shall be fully liable to the other party for any direct damages caused by any breach of contract, negligence or willful misconduct of the liable party (or any of its employees or agents) in connection with the use of the Recovery Resources or any other matter relating to this Agreement. The liable party shall indemnify and hold harmless the other party (and its affiliates, and their respective employees and agents) against any claims, actions, damages, losses or liabilities to the extent arising from any such breach of contract, negligence or willful misconduct of the liable party (or any of its employees or agents). Notwithstanding the foregoing, SunGard shall have no liability for any of Subscriber's property located at a SunGard facility or in a SunGard vehicle, except for any direct damages caused by SunGard's gross negligence or willful misconduct. Subscriber shall indemnify and hold harmless SunGard (and its affiliates, and their respective employees and agents) against any claims, actions, damages, losses or liabilities to the extent arising from the use, control or possession of any Mobile Resources by Subscriber (or any of its employees or agents). Excluding Subscriber's payment obligations, under no circumstances shall either party be liable for lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable.

IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION.

5.  **FORCE MAJEURE.** Neither party shall be liable for, nor shall either party be considered in breach of this Agreement due to, any failure to perform its obligations under this Agreement as a result of a cause beyond its control, including any natural calamity, act of God or a public enemy, act of any military, civil or regulatory authority, change in any law or regulation, disruption or outage of communications, power or other utility, failure to perform by any supplier or other third party, or other cause which could not have been prevented with reasonable care. If, due to any such cause, SunGard is unable to provide to Subscriber a material part of the Recovery Services described in a Schedule and this inability continues for a period of more than 30 days, then the Monthly Fees for those Recovery Services for that period shall be waived and the term of that Schedule shall be extended by an equal period. If this inability continues for more than five days after Subscriber has declared a Disaster, then Subscriber may terminate that Schedule, without penalty, by giving written notice of termination to SunGard at any time before the inability ends.

6.  **TERMINATION FOR CAUSE.** If either party breaches any of its obligations under this Agreement in any material respect and the breach is not substantially cured within the cure period specified below, then the other party may terminate this Agreement or any Schedule(s), without penalty, by giving written notice to the breaching party at any time before the breach is substantially cured. With respect to a breach of SunGard's obligation to provide the Recovery Services to Subscriber during a Disaster, the cure period shall be five days. With respect to Subscriber's payment obligations, the cure period shall be ten days after receipt of SunGard's written notice of non-payment. With respect to all other obligations under this Agreement, the cure period shall be 30 days after receipt of written notice describing the breach, provided that, if a longer period is reasonably required to cure the breach and the cure is promptly begun, such cure period shall be extended for as long as the cure is being diligently prosecuted to completion.

7.  **NOTICE.** All notices, consents and other communications under this Agreement shall be in writing and shall be deemed to have been received on the earlier of the date of actual receipt or the third business day after being sent by first class mail. Any notice may be given by facsimile, and Disaster declaration notice may be given orally, provided that, in either case, a signed written confirmation is received within 24 hours thereafter. Subscriber's address for notice is stated in each Schedule. SunGard's address for notice is 1285 Drummers Lane, Wayne, Pennsylvania, 19087, Attention: Contract Administration.

8.  **ENTIRE UNDERSTANDING.** This Agreement (which includes and incorporates all Schedules and Addenda to this Agreement) states the entire understanding between the parties with respect to its subject matter, and supersedes all prior proposals, negotiations and other written or oral communication between the parties with respect to the subject matter of this Agreement. No modification of this Agreement, and no waiver of any breach of this Agreement, shall be effective unless in writing and signed by an authorized representative of the party against whom enforcement is sought. No waiver of any breach of this Agreement, and no course of dealing between the parties, shall be construed as a waiver of any subsequent breach of this Agreement.

9.  **PARTIES IN INTEREST.** Neither party may assign this Agreement or any rights or obligations under this Agreement without the prior written consent of the other party which will not be unreasonably withheld. This Agreement shall bind, benefit and be enforceable by and against both parties and their respective successors and consented to assigns. No third party shall be considered a beneficiary of this Agreement or entitled to any rights under this Agreement.

10.  **CONSTRUCTION. THIS AGREEMENT SHALL BE GOVERNED BY SUBSTANTIVE PENNSYLVANIA LAW.** In any action relating to this Agreement, the prevailing party shall be entitled to recover its reasonable attorney's fees and court costs from the other party. A determination that any term of this Agreement is invalid or unenforceable shall not affect the other terms of this Agreement. Section headings are for convenience of reference only and shall not affect the interpretation of this Agreement. The relationship between the parties created by this Agreement is that of independent contractors, and not partners, joint venturers or agents. Sections D3, D4 and D10 shall survive any termination of this Agreement.



*1999, SunGard Recovery Services Inc., all rights reserved (CORS-199)

**SCHEDULE A GOVERNED BY**
**RECOVERY SERVICES AGREEMENT DATED 05/13/1999**
**BETWEEN SUNGARD RECOVERY SERVICES INC. and COMCAR INDUSTRIES INCORPORATED**
Page 1 of 5

| Selected Services: | Included Yes/No | Test Periods | Disaster Fees (only during a Disaster) Declaration | Daily Usage |
|---|---|---|---|---|
| (a) Mobile Recovery Services: | | | | |
| (i) Replacement Recovery System: | Yes | Three (3) | $0 | $1.250 [1,2] |
| Delivery Method(s) Selected: | Primary Recovery Facility/Alternate Recovery Facility/Mobile Data Center/Subscriber Facility | | | |
| (ii) Computer Space: | No | N/A | $0 | $0 |
| Delivery Method(s) Selected: | N/A | | | |
| (iii) Supplemental Office Space: | Yes | N/A | | |
| (iv) Mobile Work Group Space: | No | N/A | $0 | $0 |
| (v) Quick Ship Equipment: | No | N/A | $0 | $0 |
| (b) Center-Based Recovery Services: | | | | |
| (i) Work Group Space: | Yes | Three (3) | $2.500 | $500 |
| (ii) MegaVoice (sm): | No | N/A | $0 | $0 |

[1]  Initial 30 days of Daily Usage Fees during a Disaster will not be charged.

[2]  Per configuration.

---

Commencement Date: 05/01/1999                                  Monthly Fee: Effective 05/01/1999            $11.812

Agreed Term: 60 month(s)

Subscriber's Location:        502 EAST BRIDGERS AVENUE, AUBURNDALE, FL  33823

Send Subscriber Notices to:   502 EAST BRIDGERS AVENUE, AUBURNDALE, FL  33823

                             ATTN: MERRILL Y. FOUTZ

Send Subscriber Invoices to:  502 EAST BRIDGERS AVENUE, AUBURNDALE, FL  33823

                             ATTN: MERRILL Y. FOUTZ

THIS IS A YEAR 2000 READINESS DISCLOSURE MADE PURSUANT TO THE TERMS AND PROTECTIONS OF THE YEAR 2000 INFORMATION AND READINESS DISCLOSURE ACT. THE MANUFACTURER(S) OF CERTAIN OF THE COMPONENTS SPECIFIED ON THIS SCHEDULE HAS/HAVE ISSUED PUBLIC STATEMENTS REGARDING THE YEAR 2000 COMPLIANCE STATUS OF THE COMPONENTS. SOME MANUFACTURERS HAVE INDICATED THAT CERTAIN OF THEIR PRODUCTS WILL NOT BE YEAR 2000 COMPLIANT. SUNGARD IS NOT THE MANUFACTURER, DEVELOPER, OR DISTRIBUTOR OF THE COMPONENTS AND, WITH RESPECT TO THE YEAR 2000, MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE COMPONENTS. IN THAT REGARD, YOU SHOULD CONTACT THE MANUFACTURER(S) OF THE COMPONENTS IN ORDER TO ASCERTAIN THE YEAR 2000 STATUS. IN ADDITION, YOU MAY REFER TO SUNGARD'S WEB PAGE AT http://recovery.sungard.com FOR LINKS TO THE VARIOUS MANUFACTURERS' SITES REGARDING THE YEAR 2000 AND THE STATUS OF THE COMPONENTS.

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Schedule and ratify the terms of the Recovery Services Agreement.

| SUNGARD RECOVERY SERVICES INC. | SUBSCRIBER: COMCAR INDUSTRIES INCORPORATED |
|---|---|
| BY: _David R. Deckman_ | BY: _Merrill Y Foutz Jr_ |
| PRINT NAME: DAVID A. DECKMAN | PRINT NAME: _Merrill Y Foutz Jr_ |
| PRINT TITLE: SENIOR VICE PRESIDENT | PRINT TITLE: _Sr Vice President / CFO_ |
| DATE SIGNED: _5/26/99_ | DATE SIGNED: _5/18/99_ |

---

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**
Quote ID 5316 A, Last Modified 05/13/1999

SCHEDULE A GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED 05/13/1999
BETWEEN SUNGARD RECOVERY SERVICES INC. and COMCAR INDUSTRIES INCORPORATED
Page 2 of 5

| Mobile Configuration 1: | Quantity | Description |
|---|---|---|
| | 1 | HP 9000-K570 PROCESSOR (NO CPU, NO MEMORY) |
| | 4 | 200MHZ CPU |
| | 1600 | MB MEMORY |
| | 60 | GB DISK STORAGE (RAW 100% USEABLE) |
| | 1 | 12/24 GB DAT TAPE (4MM, DDS-3,125M) |
| | 2 | 4/16 GB DAT TAPE (4MM, DDS-2, 120M) |
| | 1 | 16 PORT MUX/MODEM CARD (RS232) |
| | 2 | CD-ROM DRIVE |
| | 2 | ETHERNET INTERFACE |
| | 1 | ETHERNET INTERFACE |
| | 1 | NCC ACCESS |
| | 1 | 300 LPM PRINTER (SERIAL, ASCII) |
| | 1 | CISCO 4700M ROUTER BASE UNIT #1 [3] |
| | | 1 configured as follows: |
| | 1 | ETHERNET PORT |
| | 2 | SERIAL PORT |
| | 1 | AT&T FRAME RELAY ACCESS FOR BACKUP PVC'S [3] |
| | 4 | HP COMPATIBLE TERMINALS |

| Mobile Configuration 2: | Quantity | Description |
|---|---|---|
| | 1 | HP 9000-K570 PROCESSOR (NO CPU, NO MEMORY) |
| | 4 | 200MHZ CPU |
| | 1600 | MB MEMORY |
| | 60 | GB DISK STORAGE (RAW 100% USEABLE) |
| | 3 | 4/16 GB DAT TAPE (4MM, DDS-2, 120M) |
| | 3 | CD-ROM DRIVE |
| | 3 | ETHERNET INTERFACE |
| | 1 | NCC ACCESS |
| | 1 | HP LASERJET 5SI (24PPM) |
| | 4 | HP COMPATIBLE TERMINALS |

| Mobile Configuration 3: | Quantity | Description |
|---|---|---|
| | 1 | HP 9000-K570 PROCESSOR (NO CPU, NO MEMORY) |
| | 6 | 200MHZ CPU |
| | 1600 | MB MEMORY |
| | 60 | GB EMC SYMMETRIX DISK (RAW - 100% USEABLE) |
| | 3 | 4/16 GB DAT TAPE (4MM, DDS-2, 120M) |
| | 2 | CD-ROM DRIVE |
| | 3 | ETHERNET INTERFACE |
| | 1 | MODEL '160FX' OPTICAL LIBRARY SVC LVL (4 DRIVES, 2.6GB CAPACITY, 64 SLOTS) |
| | 1 | NCC ACCESS |
| | 1 | 300 LPM PRINTER (SERIAL, ASCII) |
| | 6 | HP COMPATIBLE TERMINALS |

| Mobile Configuration 4: | Quantity | Description |
|---|---|---|

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.
Quote ID 5316 A, Last Modified 05/13/1999

**SCHEDULE A GOVERNED BY**
**RECOVERY SERVICES AGREEMENT DATED 05/13/1999**
**BETWEEN SUNGARD RECOVERY SERVICES INC. and COMCAR INDUSTRIES INCORPORATED**
**Page 3 of 5**

| Mobile Configuration 4: | Quantity | Description |
|---|---|---|
| | 1 | HP 9000-K580 PROCESSOR (NO CPU, NO MEMORY) |
| | | 1 configured as follows: |
| | 6 | 240MHZ CPU |
| | 1600 | MB MEMORY |
| | 8 | GB DISK (RAW 100% USABLE) |
| | 1 | ETHERNET INTERFACE |
| | 60 | GB EMC SYMMETRIX DISK (RAW - 100% USEABLE) |
| | 3 | 4/16 GB DAT TAPE (4MM, DDS-2, 120M) |
| | 1 | 16 PORT MUX/MODEM CARD (RS232) |
| | 3 | CD-ROM DRIVE |
| | 3 | ETHERNET INTERFACE |
| | 1 | NCC ACCESS |
| | 1 | 900 LPM PRINTER (SERIAL, ASCII) |
| | 6 | HP COMPATIBLE TERMINALS |

| Mobile Configuration 5: | Quantity | Description |
|---|---|---|
| | 1 | HP 9000-K580 PROCESSOR (NO CPU, NO MEMORY) |
| | | 1 configured as follows: |
| | 4 | 240MHZ CPU |
| | 1600 | MB MEMORY |
| | 18 | GB DISK (RAW 100% USABLE) |
| | 1 | ETHERNET INTERFACE |
| | 42 | GB EMC SYMMETRIX DISK (RAW - 100% USEABLE) |
| | 3 | 4/16 GB DAT TAPE (4MM, DDS-2, 120M) |
| | 3 | CD-ROM DRIVE |
| | 1 | ETHERNET INTERFACE |
| | 1 | NCC ACCESS |
| | 1 | HP 5000 MODEL C30 (30PPM SIMPLEX) |
| | 15 | SUNNET-IV MODEM, AVAILABLE TO SHIP |
| | 4 | ASCII TERMINAL |

| Mobile Configuration 6: | Quantity | Description |
|---|---|---|
| | 1 | 620-2182,464.3 CPW |
| | | 1 configured as follows: |
| | 2048 | 6XX MB MEMORY |
| | 80 | GB OF AS/400 DASD (RAID 5 PROTECTION - 75% USEABLE) |
| | 1 | 6385, 1/4" CARTRIDGE, 13GB |
| | 1 | 6X40 TWINAX WORKSTATION CONTROLLER |
| | 1 | ASCII WORKSTATION CONTROLLER, 6 PORTS |
| | 10 | COMM PORTS RS232, ANY PROTOCOL |
| | 5 | COMM PORTS V.35, ANY PROTOCOL |
| | 1 | ETHERNET ADAPTER |
| | 1 | NCC ACCESS |
| | 1 | PERLE 3I PROTOCOL CONVERTER |
| | 1 | TOKEN RING ADAPTER |


Initials
SunGard  Subscriber

---

**THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.**
Quote ID 5316 A, Last Modified 05/13/1999

**SCHEDULE A GOVERNED BY**
**RECOVERY SERVICES AGREEMENT DATED 05/13/1999**
**BETWEEN SUNGARD RECOVERY SERVICES INC. and COMCAR INDUSTRIES INCORPORATED**
**Page 4 of 5**

**Mobile Configuration 6:**

| Quantity | Description |
|---|---|
| 1 | 4245-T12 LINE PRINTER, 1200 LPM |
| 5 | SUNNET-IV MODEM, AVAILABLE TO SHIP |
| 7 | 3196 TERMINALS OR EQUIVALENT |
| 1 | PC REMOTE OPERATIONS CONSOLE |
| 1 | DIESEL GENERATOR (50 KW (62.5 KVA) @ 60HZ) |

**Mobile Configuration 7:**

| Quantity | Description |
|---|---|
| 5 | COMPAQ DESKPRO 2000, VGA MONITOR, CD-ROM |
|  | 5 configured as follows: |
| 1 | PP/200 CPU |
| 64 | MB RAM |
| 1 | ETHERNET NIC |
| 3 | GB DISK |
| 1 | COMPAQ PROLIANT 2500, VGA MONITOR, CD-ROM |
|  | 1 configured as follows: |
| 2 | PP/200 CPU |
| 512 | MB RAM |
| 1 | ETHERNET NIC |
| 20 | GB DISK |
| 1 | TOKEN RING NIC |
| 1 | COMPAQ PROLIANT 2500, VGA MONITOR, CDROM |
|  | 1 configured as follows: |
| 2 | PP/200 CPU |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | COMPAQ PROLIANT 2500, VGA MONITOR, CDROM |
|  | 1 configured as follows: |
| 2 | PP/200 CPU |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | TOKEN RING NIC |
| 1 | COMPAQ PROLIANT 4500, VGA MONITOR, CDROM |
|  | 1 configured as follows: |
| 2 | 5/133 CPU |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | TOKEN RING NIC |
| 1 | COMPAQ PROLIANT 5000, VGA MONITOR, CDROM |
|  | 1 configured as follows: |
| 2 | PP/200 CPU |
| 128 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | TOKEN RING NIC |

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.
Quote ID 5316 A, Last Modified 05/13/1999

SCHEDULE A GOVERNED BY
RECOVERY SERVICES AGREEMENT DATED 05/13/1999
BETWEEN SUNGARD RECOVERY SERVICES INC. and COMCAR INDUSTRIES INCORPORATED
Page 5 of 5

**Mobile Configuration 7:**

| Quantity | Description |
|---|---|
| 1 | COMPAQ PROLIANT 5000, VGA MONITOR, CDROM |
| | 1 configured as follows: |
| 2 | PP/200 CPU |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | COMPAQ PROLIANT 5000, VGA MONITOR, CDROM |
| | 1 configured as follows: |
| 2 | PP/200 CPU |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | TOKEN RING NIC |
| 1 | COMPAQ PROLIANT 5000, VGA MONITOR, CDROM |
| | 1 configured as follows: |
| 1 | PP/200 |
| 128 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 1 | TOKEN RING CARD |
| 1 | COMPAQ PROLIANT 5000, VGA MONITOR, CDROM |
| | 1 configured as follows: |
| 2 | PP/200 CPU |
| 512 | MB RAM |
| 1 | ETHERNET NIC |
| 20 | GB DISK |
| 1 | TOKEN RING NIC |
| 1 | COMPAQ PROLIANT 6000, VGA MONITOR, CD-ROM |
| | 1 configured as follows: |
| 1024 | MB RAM |
| 1 | ETHERNET NIC |
| 10 | GB DISK |
| 2 | PP/200 CPU |
| 1 | DIGIBOARD (16 PORT) |

**Work Group Configuration:**

| Quantity | Description |
|---|---|
| 1 | METROCENTER FACILITY ACCESS |
| 1 | ACCESS TO COPIER AND FACSIMILE |
| 40 | FURNISHED WORK POSITION, WIRED, PHONE HANDSET |
| 40 | VOICE GRADE LINES, DIRECT DIAL |

[3]   To be provided to Subscriber at the Primary or Alternate Recovery Facility only and will be governed by the General Multiple Disaster Procedures, in the event of a Multiple Disaster.


Initials
SunGard  Subscriber

THE TERMS OF THIS SCHEDULE ARE CONFIDENTIAL.
Quote ID 5316 A, Last Modified 05/13/1999

GRAYHATONNE

# ADDENDUM FOR SUNGARD NATIONAL NETWORK SERVICES
## TO SCHEDULE A
## TO RECOVERY SERVICES AGREEMENT DATED 05/13/99
### (See Additional Terms on Reverse Side)

The SunGard Recovery Services Agreement, having the above date, between SunGard and the Subscriber named below ("Agreement") is hereby amended with regard to the Schedule identified above ("Specified Schedule") consistent with the terms and conditions of the Agreement, as follows, effective 05/01/99. Subscriber has elected for SunGard to provide the network services ("Services") selected below.

| Services | Quantity | Total Monthly Fee |
|---|---|---|
| **Dedicated** | | |
| DS-1 Connectivity | | |
| (Destination Point ) | | $0 |
| DS-3 Connectivity | | |
| (Destination Point ) | | $0 |
| **On-Demand** | | |
| DS-1 Connectivity | | |
| (Destination Point SNN Node - Maitland, Fl) | 1 | $900 |
| DS-1 Connectivity | | |
| (Destination Point SNN Node - Maitland, Fl) | 1 | $500 |
| DS-3 Connectivity | | |
| (Destination Point ) | | $0 |

*Unless the following section is completed, indicating that SunGard is responsible for providing the connection(s) between Subscriber's location(s) and the designated point of presence on the National Network ("Local Access"), Subscriber is solely responsible for establishing the connection between Subscriber's location(s) and the designated point of presence on SunGard's National Network through its Local Exchange Provider. Once the Local Access has been established, Subscriber is responsible for contacting SunGard, to obtain the necessary facility assignment information to connect Local Access to SunGard National Network Node.*

| National Network Access | | |
|---|---|---|
| DS-1 Connectivity | | |
| (Destination Point ) | | $0 |
| DS-3 Connectivity | | |
| (Destination Point ) | | $0 |

Subscriber will be invoiced an additional Monthly Fee of $1,400, plus any applicable tax, in accordance with the terms of the Agreement and this Addendum. The term of this Addendum will commence upon the effective date noted above or the date of installation, whichever is later, and shall continue until the end of the initial Agreed Term for the Specified Schedule or any extended or renewal term of the Specified Schedule. In addition, Subscriber is responsible for one-time installation charges in the amount of $0 which will be invoiced in accordance with the foregoing.

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

| SUNGARD RECOVERY SERVICES INC. | SUBSCRIBER:  ComCar Industries Incorporated |
|---|---|
| BY: _David A. Dechman_ | BY: _Merrill Y Fruit_ |
| PRINT NAME: DAVID A. DECKMAN | PRINT NAME: MERRILL Y FRUTE Jr |
| PRINT TITLE: SENIOR VICE PRESIDENT | PRINT TITLE: Sr Vice President (CFO) |
| DATE SIGNED: 5/26/99 | DATE SIGNED: 5/18/99 |

> THE TERMS OF THIS ADDENDUM ARE CONFIDENTIAL

## ADDITIONAL TERMS

### Dedicated Services

The Services identified as "Dedicated" within this Addendum shall be made available to Subscriber on an exclusive 24-hour, 7-day per week basis (excluding downtime attributable to routine and preventative maintenance). All Dedicated circuits will be connected between the National Network entry point, as designated and coordinated by SunGard ("point of presence"), and the Destination Point defined on the front page of this Addendum. Subscriber shall have access to these Services for Disaster Recovery Purposes, in accordance with SunGard's obligations as defined in the Agreement, and as further delineated in this Addendum. Any other use of the Services by Subscriber shall constitute a material breach of the Agreement for which SunGard may terminate the Agreement by providing five (5) days written notice.

For purposes of this Addendum, "Disaster Recovery Purposes" means any use of the Services by Subscriber: (i) while Subscriber is experiencing a Disaster; (ii) which connectivity facilitates Subscriber's recovery during a Disaster; (iii) to conduct a Test(s); or (iv) electronic vaulting.

### On-Demand Services

Services identified as "On-Demand" within this Addendum shall be made available to Subscriber within two (2) hours upon receipt of a request from Subscriber, based on then current availability on SunGard's National Network, in accordance with the General Multiple Disaster Procedures in the Agreement. All On-Demand circuits will be connected between the National Network entry point, as designated and coordinated by SunGard ("point of presence"), and the Destination Point defined on the front page of this Addendum. Once Subscriber has been switched onto a circuit on the National Network, the Services will be available on a 24 hour, 7 days per week basis (excluding downtime attributable to routine and preventative maintenance). Subscriber shall have access to these Services for testing or Disaster purposes, consistent with SunGard's obligations as defined in the Agreement. Any other use of the Services by Subscriber shall constitute a material breach of the Agreement for which SunGard may terminate the Agreement by providing five (5) days written notice. During a Disaster, Subscriber shall have access to the number of circuits for the period of no more than six (6) weeks.

For DS-3 connectivity, a Disaster Declaration Fee of no less than $5,000 will be charged per occurrence, and for DS-1 connectivity, a Disaster Declaration Fee of no less than $2,500 will be charged per occurrence. If a Declaration Fee of equal or greater value is charged in association with the Specified Schedule, then the Declaration Fee for the National Network will be deemed included in such fee. Daily Usage Fees (per circuit during Disaster only) will be charged as follows:

| | |
|---|---|
| DS-1 Connectivity | $ 1,000 |
| DS-3 Connectivity | $ 5,000 |

### Testing

Subscriber shall have access to the Services to conduct Test(s) in conjunction with Test(s) of the Recovery Services as defined on the Specified Schedule.

### General

In the event that Subscriber does not contract with SunGard to establish the connection between Subscriber's Location and the point of presence on the National Network, Subscriber is then responsible to provide the resources to connect to SunGard's National Network from its Location to the designated point of presence.

### Termination

The Services are provided subject to the availability of the necessary services by SunGard's underlying carrier(s). SunGard may, without penalty, and by providing Subscriber with thirty (30) days prior written notice, terminate this Addendum (or any portion of this Addendum), or may withhold the provision of the Services if: (a) SunGard's underlying carrier(s) withdraw or substantially alter any underlying tariff(s) resulting in a material, adverse effect on SunGard's operational or financial ability to provide the Service(s), or (b) any public utility commission or other regulatory authority asserts jurisdiction over the Services, such that SunGard would be required to submit to common carrier, public utility or other regulation to which SunGard is not now subject.

### Limitation of Liability

UNDER NO CIRCUMSTANCES SHALL SUNGARD'S TOTAL LIABILITY EXCEED THE TOTAL OF ALL FEES ACTUALLY PAID BY SUBSCRIBER TO SUNGARD UNDER THIS ADDENDUM. SUNGARD SHALL HAVE NO LIABILITY FOR ANY DAMAGE TO, LOSS OF OR INTERCEPTION OF SUBSCRIBER'S DATA, FILES, SOFTWARE, CODE, OPERATING SYSTEMS, APPLICATIONS, DATA STORAGE MEDIA, OR OTHER PROPERTY THAT OCCURS DURING CONNECTION, TRANSMISSION, USE OR RESTORATION BY SUBSCRIBER OR SUNGARD IN CONJUNCTION WITH THE SERVICES. Subscriber shall indemnify and hold harmless SunGard (and its affiliates and their respective employees and agents) against any claims, actions, damages, losses or liabilities arising out of any action brought against SunGard by a third party as a result of the Services. Under no circumstances shall SunGard be liable to Subscriber or any other third party for lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable.

EXCEPT AS SPECIFICALLY STATED IN THIS ADDENDUM, SUNGARD MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION.

Rev. 1/99 RBIA

## ADDENDUM FOR SUNGARD NATIONAL NETWORK SERVICES
## TO SCHEDULE A
## TO RECOVERY SERVICES AGREEMENT DATED 5/13/99
### (See Additional Terms on Reverse Side)

The SunGard Recovery Services Agreement, having the above date, between SunGard and the Subscriber named below ("Agreement"), is hereby amended with regard to the Schedule identified above ("Specified Schedule"), consistent with the terms and conditions of the Agreement, as follows, effective 5/1/99  Subscriber has elected for SunGard to provide the Network and Internet Access Services ("Services") selected below:

|  | QUANTITY | TOTAL MONTHLY FEE |
|---|---|---|
| **INTERNET ACCESS SERVICES** | | |
| **Recovery Based Internet Access**: | | $300.00 |
| ☒  512 Kbps Internet Connectivity (Destination Point Atlanta MC) | 1 | |
| ☐  N/A Internet Connectivity (Destination Point    ) | N/A | |

Subscriber will be invoiced an additional Monthly Fee of $300.00, plus any applicable tax, in accordance with the terms of the Agreement and this Addendum. The term of this Addendum will commence upon the effective date noted above, and shall continue until the end of the initial Agreed Term for the Specified Schedule or any extended or renewal term of the Specified Schedule. In addition, Subscriber is responsible for one-time installation charges in the amount of $$0, which will be invoiced in accordance with the terms of the Agreement and this Addendum.

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

SUNGARD RECOVERY SERVICES INC.

BY: _David A. Deckman_

PRINT NAME: DAVID A. DECKMAN
SENIOR VICE PRESIDENT

PRINT TITLE: _____

DATE SIGNED: __5/26/99__

SUBSCRIBER: ComCar Industries Incorporated

BY: _Merrill J. Fast Jr_

PRINT NAME: Merrill J. Fast Jr

PRINT TITLE: Sr. Vice - President / CFO

DATE SIGNED: __5/18/99__

---

**THE TERMS OF THIS ADDENDUM ARE CONFIDENTIAL.**

## INTERNET ACCESS SERVICES

**General Internet Access Terms.** SunGard's Internet Access Services will provide Subscriber with connectivity to the Internet through SunGard's Internet Access Services subject to the terms and conditions of the Agreement and this Addendum and fully licensed Internet software, if applicable. The Internet is not owned, operated or managed by or in any way affiliated with SunGard or any of SunGard's affiliates. The Internet is an international computer network of both Federal and non-Federal, interconnected, packet switched data networks. SunGard cannot and will not guarantee that the Internet Access Services will provide Internet access that is sufficient to meet Subscriber's needs. Subscriber agrees that its use of the Internet Access Service and the Internet is solely at its own risk and is subject to all applicable local, state, national and international laws and regulations.

Subscriber hereby acknowledges receipt of SunGard's and/or its underlying carriers' policies and/or rules and regulations ("Policies") and agrees to comply with such Policies at all times while utilizing the Internet Access Services. Subscriber also acknowledges that a breach of any of the Policies may result in the immediate termination of the Internet Access Services without prior notice and SunGard shall have no liability to Subscriber for any restriction or termination of the Internet Access Services pursuant to Subscriber's violation of the Policies. Subscriber agrees that the Access Service is provided on an "as is" "as available" basis without warranties of any kind, either express or implied. Subscriber agrees that SunGard has the right, but not the obligation, to remove content from SunGard's computer servers which SunGard, in its sole discretion, determines to be in violation of this Agreement or SunGard's underlying carrier(s) on-line policy.

### Recovery Based Internet Access

The Recovery Based Internet Access Services offer Subscriber access to the Internet from the SunGard facility designated on the front of this Addendum for Disaster Recovery Purposes. The Services shall be made available to Subscriber within two (2) hours after receipt of a request from Subscriber based on then current availability on SunGard's National Network in accordance with the General Multiple Disaster Procedures in the Agreement. Subscriber recognizes that these Services are not provider specific, therefore Subscriber is responsible for setting up any necessary domain(s) in order to facilitate effective use of the Recovery Based Internet Access Services. Subscriber shall have access to these Services for Disaster Recovery Purposes, in accordance with SunGard's obligations as defined in the Agreement, and as further delineated in this Addendum. Any other use of the Services by Subscriber shall constitute a material breach of the Agreement for which SunGard may terminate the Agreement by providing five (5) days written notice.

For the Recovery Based Internet Access Services, a Disaster Declaration Fee of no less than $5,000 will be charged per occurrence. If a Declaration Fee of equal or greater value is charged in association with the Specified Schedule, then the Declaration Fee for Recovery Based Internet Access Services will be deemed included in such fee. Daily Usage Fees (per bandwidth during Disaster only) will be charged as follows:

| | |
|---|---|
| 512 Kbps - 10 Mbps Internet Access | $1,000 |
| 10.1 - 45 Mbps Internet Access | $2,000 |

### Testing

Subscriber shall have access to the Services to conduct Test(s) in conjunction with Test(s) of the Recovery Services as defined on the Specified Schedule.

### Termination

The Services are provided subject to the availability of the necessary services by SunGard's underlying carrier(s). SunGard may, without penalty, and by providing Subscriber with thirty (30) days prior written notice, terminate this Addendum (or any portion of this Addendum), or may withhold the provision of the Services if: (a) SunGard's underlying carrier(s) withdraw or substantially alter any underlying tariff(s) resulting in a material, adverse effect on SunGard's operational or financial ability to provide the Service(s); or (b) any public utility commission or other regulatory authority asserts jurisdiction over the Services, such that SunGard would be required to submit to common carrier, public utility or other regulation to which SunGard is not now subject.

### Limitation of Liability

UNDER NO CIRCUMSTANCES SHALL SUNGARD'S TOTAL LIABILITY EXCEED THE TOTAL OF ALL FEES ACTUALLY PAID BY SUBSCRIBER TO SUNGARD UNDER THIS ADDENDUM. SUNGARD SHALL HAVE NO LIABILITY FOR ANY DAMAGE TO, LOSS OF OR INTERCEPTION OR MISDIRECTION OF SUBSCRIBER'S DATA, FILES, SOFTWARE, COMPUTER OPERATING SYSTEMS, APPLICATIONS, DATA STORAGE MEDIA, OR OTHER PROPERTY THAT OCCURS DURING CONNECTION, TRANSMISSION, USE OR RESTORATION BY SUBSCRIBER OF SUNGARD IN CONJUNCTION WITH THE SERVICES. Subscriber shall indemnify and hold harmless SunGard and its affiliates and their respective employees and agents against any claims, actions, damages, losses, liabilities arising out of any action brought against SunGard by a third party as a result of Subscriber's use of the Services. Under no circumstances shall SunGard be liable to Subscriber or any other third party for lost revenues, lost profits, loss of business, or consequential or special damages of any nature, whether or not foreseeable.

EXCEPT AS SPECIFICALLY STATED IN THIS ADDENDUM, SUNGARD MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO ANY REPRESENTATION OR DESCRIPTION.

## ADDENDUM TO SCHEDULE ___A___
### TO RECOVERY SERVICES AGREEMENT DATED___ 5/13/99 ___

The Recovery Services Agreement, having the above date, between SunGard Recovery Services Inc. ("SunGard") and the Subscriber named below, ("Agreement"), with regard to the Schedule identified above ("Specified Schedule") is amended effective ___ 5/1/99 ___, as follows:

"Notwithstanding anything to the contrary regarding Test Periods on the Specified Schedule, Subscriber shall be entitled to twelve (12) Test Periods for the Mobile Configuration defined on the Specific Schedule"

The term of this Addendum shall continue until the end of the initial Agreed Term or any extended or renew term of the Specified Schedule.

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

**SUNGARD RECOVERY SERVICES INC.**

BY: _David A. Deckman_

PRINT NAME: DAVID A. DECKMAN

PRINT TITLE: SENIOR VICE PRESIDENT

DATE SIGNED: ___ 5/26 ___, 19 99

**SUBSCRIBER: Comcar Industries Incorporated**

BY: _Merrill J. Foust Jr_

PRINT NAME: _Merrill J. Foust_

PRINT TITLE: _Sr Vice President / CFO_

DATE SIGNED: ___ 5/18/99 ___, 19 ___

**THE TERMS OF THIS ADDENDUM ARE CONFIDENTIAL.**

## ADDENDUM TO SCHEDULE ___A___
## TO RECOVERY SERVICES AGREEMENT DATED ___5/13/99___

The Recovery Services Agreement, having the above date, between SunGard Recovery Services Inc. ("SunGard") and the Subscriber named below, ("Agreement"), with regard to the Schedule identified above ("Specified Schedule") is amended effective _____5/1/99_____, as follows:

I. **COVERED LOCATIONS**
The following ___9___ locations are referred to as the "Covered Locations":
1. Comcar Industries:502 E.Bridgers Ave, Auburndale, Fl. 33823(Primary Billing)
2. Roseway Transportation:502 E.Bridgers Ave, Auburndale, Fl.33823
3. Clayhyder Truck Lines:502 E.Bridgers Ave, Auburndale, Fl. 33823
4. Commercial Carrier Corp:509 HWY 92 East, Auburndale,Fl.33823
5. MD Transport:509 HWY 92 East, Auburndale, Fl. 33823
6. CTL Distribution:4201 Bonnie Mine Road, Mulberry, Fl. 33860
7. Coastal Transport:322 Grange Road, Pt. Wentworth, GA. 31407
8. Midwest Coast Transport:1600 East Benson Road, Sioux Falls,SD 57117
9. Willis Shaw Express:201 N.Elm Drive,Elm Springs,AR 72728

II. **MULTIPLE LOCATION COVERAGE**
Each of the Covered Locations may use the Recovery Services described in the Specified Schedule alone or together with another Covered Location, as needed, provided that all affected Locations shall use only the configuration described in the Specified Schedule (subject to future additions), and the total number in use does not exceed one Covered Location's configuration at any given time. Regardless of the number of Covered Locations that may experience a Disaster at or about the same time, Subscriber shall not be entitled to use any equipment or services other than those described in the Specified Schedule (unless separately contracted for). Subscriber may have more than _____9_____ locations covered by contracting for the additional facilities separately.

III. **ADDITIONAL RECOVERY SERVICES**
Subscriber may add equipment or services, then standardly offered by SunGard, to the Specified Schedule for an additional Monthly Fee, at anytime other than during a Disaster.

IV. **TESTING**
Subscriber is responsible for allocating the Test Periods stated in the Specified Schedule among the Covered Locations.

V. **BILLING**
_____SunGard will invoice Subscriber's Primary Covered Location in accordance with the terms of the Agreement._____

By the signatures of their duly authorized representatives below, SunGard and Subscriber, intending to be legally bound, agree to all of the provisions of this Addendum and ratify the terms of the Agreement.

**SUNGARD RECOVERY SERVICES INC.**

BY: _David A. Deckman_

PRINT NAME: DAVID A. DECKMAN

PRINT TITLE: SENIOR VICE PRESIDENT

DATE SIGNED: ___5/26___, 19 _99_

**SUBSCRIBER:** _Comcar Industries Incorpora___

BY: _Merrill Y Foute_

PRINT NAME: _Merrill Y Foute_

PRINT TITLE: _Sr Vice President / CFO_

DATE SIGNED: _5/18/99_ , 19 ____

EXHIBIT B

**WADDELL, READY, PICKETT & BOUCHILLON, P.A.**

GLENN WADDELL
BILLY R. READY *
C. ROBERT PICKETT **
K.C. BOUCHILLON *
* ALSO ADMITTED IN MISSISSIPPI
** ALSO ADMITTED IN MARYLAND & D C

ATTORNEYS AT LAW

209 PALMETTO STREET
POST OFFICE BOX 1363
AUBURNDALE, FLORIDA 33823
WWW.LEXWAN.COM

DENISE CAS
CERTIFIED LEGAL ASSISTAN

TELEPHONE 863 965 251
FACSIMILE 863 965 242

September 18, 2000

Ms Carolyne Usherwood
Administrative Assistant
SunGard Recovery Services, Inc.
One Northwinds Center
2475 Northwinds Parkway, Suite 250
Alpharetta, GA  30004

Dear Ms. Usherwood:

This firm represents Comcar Industries, Inc.  Our client has advised that it is their opinion SunGard has failed to perform the significant functions scheduled for their recovery service.  The performance has been totally unsatisfactory.

We, therefore, consider the contract null and void from its inception.

Yours very truly,

WADDELL, PICKETT AND BOUCHILLON, P.A.

Billy R. Ready

BRR:rsr

cc:    Mark Bostick
       Mickey Foutz
       Milton Jacobs

REC'D OCT   4 2000

EXHIBIT C

1285 Drummers Lane
Wayne, PA 19087-1586

(610) 341-8115 Fax

Senior Counsel
adeck@sungard.com

October 24, 2000

<u>Via Federal Express</u>

Billy R. Ready, Esquire
Waddell, Ready, Pickett & Bouchillon, P.A.
209 Palmetto Street
Auburndale, FL  33823

Re:    Recovery Services Agreement between SunGard Recovery Services Inc. ("SunGard") and Comcar
Industries Incorporated ("Comcar") dated May 13, 1999 ("Agreement")

Dear Mr. Ready:

I am in receipt of your correspondence dated September 18, 2000, (postmarked September 28, 2000) and received by an Administrative Assistant at SunGard's Atlanta office on October 4, 2000.  SunGard rejects your client's assertions that SunGard "has failed to perform the significant functions scheduled" under the Agreement in addition to their claim of unsatisfactory performance.

Your letter does not specify nor substantiate any claims which justify deeming the Agreement "null and void from its inception."  If Comcar feels that SunGard has materially breached the Agreement, Comcar should notify SunGard in accordance with Section D.6 of the Agreement.  Assuming, for the sake of argument, that SunGard has in fact breached the Agreement in a material respect, SunGard has an opportunity to cure any alleged breach prior to Comcar's right to terminate the Agreement.  However, the vague assertions in your letter do not afford SunGard the opportunity to determine Comcar's claims, let alone cure them.

SunGard is further mystified by your letter in that our records indicate Comcar successfully tested the Recovery Services under Schedule A on October 30, 1999, as well as putting SunGard on alert last year during Hurricane Floyd.  Therefore, the bases of your claims are unclear.

Finally, SunGard's records indicate Comcar currently has $153,364.00 in outstanding invoices and is itself in material breach of the Agreement.  Should Comcar refuse to comply with the terms of the Agreement, SunGard will have no choice but to seek all legal remedies including all attorneys' fees and costs of any action.

If you have any questions or wish to discuss this matter further, please feel free to call me at 610-341-8133.

Sincerely,

Alice A. Deck
Senior Counsel

cc:    John Cronen
Wendi Kasting

**SUNGARD·**

www.sungard.com

EXHIBIT D

# WADDELL, READY, PICKETT & BOUCHILLON, P.A.

**GLENN WADDELL**
**BILLY R. READY**\*
**C. ROBERT PICKETT**\*\*
**K.C. BOUCHILLON**\*
\* ALSO ADMITTED IN MISSISSIPPI
\*\* ALSO ADMITTED IN MARYLAND & D.C.

### ATTORNEYS AT LAW

209 PALMETTO STREET
POST OFFICE BOX 1363
AUBURNDALE, FLORIDA 33823
WWW.LEXWAN.COM

**DENISE CARD**
CERTIFIED LEGAL ASSISTANT

TELEPHONE: 863.965.2516
FACSIMILE: 863.965.2421

November 17, 2000

RECEIVED

NOV 2 0 2000

SUNGARD LEGAL

Alice A. Deck, Senior Counsel
SunGard
1285 Drummers Lane
Wayne, PA 19087-1586

RE: Recovery Services Agreement between SunGard Recovery Services, Inc.
("SunGard") and Comcar Industries, Inc. ("Comcar") dated May 13, 1999
("Agreement")

Dear Ms. Deck:

Thank you for your letter of October 24, 2000. I have reviewed this matter with my client. SunGard was to provide Comcar both hardware access and professional guidance. They failed to provide planning, guidance or onsite input.

Because of your failure Comcar was forced to hire a third party, Digital Systems Management out of Lakeland. In the initial first test SunGard had extensive difficulty with the basic recovery, tapes and procedure, even though they were advised of it previously. This resulted in a long and extensive lag time as the disk could not be allocated and setup in the test time allocated. Additionally, even though being submitted prior to the test, no terminal was supplied in order to assist the offload data.

SunGard's failure to provide the guidance and assistance necessary resulted in the lack of performance of the initial test leaving Comcar without the stated objectives of SunGard. It is, therefore, our client's position that SunGard was not prepared to assist us, leaving Comcar with uncertainty it could ill afford in this project.

Yours very truly,

Billy R. Ready

BRR:rsr

cc:  Mark Bostick
     Milton Jacobs
     Mickey Foutz
     Stan Sumerlin

EXHIBIT E

GLENN WADDELL
K.C. BOUCHILLON*

OF COUNSEL
BILLY R. READY*
ALSO ADMITTED IN MISSISSIPPI

**ATTORNEYS AT LAW**

209 PALMETTO STREET
POST OFFICE BOX 1363
AUBURNDALE, FLORIDA 33823
WWW.LEXWAN.COM

DENISE CARD
CERTIFIED LEGAL ASSISTANT

TELEPHONE: 863.965.2516
FACSIMILE: 863.965.2421

March 29, 2001

RECEIVED

APR 0 3 2001

SUNGARD LEGAL

Theodore J. Collins, Esq. – Corporate Counsel
SunGard Recovery Services, Inc.
1285 Drummers Lane
Wayne, PA 19087-1586

RE:     Recovery Services Agreement b/w Comcar Industries, Inc. ("Comcar")
        and SunGard Services, Inc. ("SunGard")
        Our File No.: 99-0364

Dear Mr. Collins:

I am in receipt of your correspondence dated March 26, 2001 in the above referenced
matter. You have requested documentation or elaboration regarding the failure of
SunGard to provide "planning, guidance, or onsite input."

In that regard, I refer you to my November 17, 2000 correspondence to Alice A. Deck,
Senior Counsel. In the letter I outlined several issues regarding the lack of performance
on the part of SunGard.

In addition and as you know, Comcar contracted with SunGard for assistance in
preparation for the transition to SunGard services. SunGard promised consulting services
to assistance in the transition. However, SunGard never provided any assistance or
"reasonable supplies and support." Therefore, Comcar was tasked with the issues
without the necessary assistance, planning, guidance or onsite input from SunGard.

A readiness test was performed and was far from successful. Again, the failure of the
readiness test was directly attributable to the lack of assistance, planning, guidance, or
onsite input from SunGard.

The relationship with SunGard has produced no results. Any cure period that might
apply has certainly expired.

If you have any questions or comments, please free to contact me. I remain,

Yours truly,

BILLY R. READY

BRR/JWT
ec:     Milton E. Jacobs