IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUNGARD RECOVERY SERVICES L.P., | : | CIVIL ACTION |
| A limited partnership, formerly known as | : | |
| SunGard Recovery Services Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | NO. 02-CV-4444 |
| v. | : | |
| | : | |
| COMCAR INDUSTRIES, INC., | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES
AND FIRST AMENDED COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendant Comcar Industries, Inc. ("Comcar"), by and through its undersigned counsel, hereby responds to plaintiff's Complaint as follows:

1.  After reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

2.  Admitted.

3.  This paragraph contains conclusions of law to which no response is required.  By way of further answer, after reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

4. This paragraph contains conclusions of law to which no response is required. By way of further answer, after reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

5. After reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

6. Denied.

7. Denied as stated. SunGard and Comcar executed a Recovery Services Agreement dated May 13, 1999. By way of further answer, this paragraph characterizes a writing that speaks for itself.

8. After reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

9. Denied. This paragraph characterizes a writing that speaks for itself.

10. Denied. This paragraph characterizes a writing that speaks for itself.

11. Denied. This paragraph characterizes a writing that speaks for itself.

12. Denied. This paragraph characterizes a writing that speaks for itself.

13. Denied. This paragraph characterizes a writing that speaks for itself.

14. Denied. This paragraph characterizes a writing that speaks for itself.

15. Denied. This paragraph characterizes a writing that speaks for itself.

16. Denied. This paragraph characterizes a writing that speaks for itself.

17. After reasonable investigation, Comcar is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in this paragraph, and therefore the allegations are deemed denied.

18. Denied. To the contrary, SunGard contracted to provide professional guidance and assistance to Comcar in planning for disaster recovery testing, but never provided any guidance or assistance to Comcar.

19. Denied, except that it is admitted Comcar representatives went to SunGard's Chicago facility expecting to be provided with both professional guidance and assistance by SunGard's disaster recovery specialists and the proper equipment and supplies to perform a disaster recovery test, all of which SunGard guaranteed under the Agreement, but failed to provide to Comcar.

20. Denied. To the contrary, the testing confirmed SunGard's complete inability to provide its guaranteed disaster recovery services provided for under the Agreement, including providing professional guidance and assistance by SunGard disaster recovery specialists and the proper equipment and supplies to conduct a disaster recovery test.

21. Denied.

22. Denied.

23. Denied. This paragraph characterizes a writing that speaks for itself.

24. Denied. This paragraph characterizes a writing that speaks for itself.

25. Admitted.

26. Denied. This paragraph characterizes a writing that speaks for itself.

27. Denied. This paragraph characterizes a writing that speaks for itself.

28. Denied. This paragraph characterizes a writing that speaks for itself.

29. Denied.

30. Denied.

31. Denied.

## COUNT I
## BREACH OF CONTRACT

32. Comcar incorporates by reference as if set forth herein at length its responses to paragraphs 1 through 31 of the Complaint.

33. Paragraph 33 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 33.

34. Paragraph 34 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 34.

35. Paragraph 35 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 35.

36. Paragraph 36 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 36.

WHEREFORE, Comcar demands judgment in its favor on Count I together with its costs and other relief permitted by law.

## COUNT II
## UNJUST ENRICHMENT

37. Comcar incorporates by reference as if set forth herein at length its responses to paragraphs 1 through 36 of the Complaint.

38. Paragraph 38 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 38.

39. Paragraph 39 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 39.

40. Paragraph 40 states a legal conclusion for which no response is required. To the extent a response is required, Comcar specifically denies allegations in paragraph 40.

WHEREFORE, Comcar demands judgment in its favor on Count II together with its costs and other relief permitted by law.

## COMCAR'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim against Comcar upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the applicable statute of limitations and/or laches.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has waived and/or must be estopped from asserting any claim against Comcar.

### FOURTH AFFIRMATIVE DEFENSE

The averments of plaintiff are barred by the doctrines of laches, waiver, estoppel, unclean hands, justification and payment.

### FIFTH AFFIRMATIVE DEFENSE

To the extent counterclaim-plaintiffs seek equitable relief they have an adequate remedy at law.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to mitigate its alleged damages.

**SEVENTH AFFIRMATIVE DEFENSE**

There was a failure of consideration.

**EIGHTH AFFIRMATIVE DEFENSE**

Defendant Comcar reserves the right to amend its Answer to add any additional defenses as facts become known to it through discovery.

WHEREFORE, Defendant Comcar demands judgment in its favor and against Plaintiff, for an award of costs, including reasonable attorneys' fees, and for such further relief as the Court may direct.

**FIRST AMENDED COUNTERCLAIMS**

**COUNT I**
**BREACH OF CONTRACT**

Comcar, by way of Counterclaim, alleges as follows:

1. SunGard Recovery Services LP, ("SunGard") is a limited partnership with its principal place of business located at 1285 Drummers Lane, Wayne, Pennsylvania 19087.

2. Comcar Industries, Inc. ("Comcar") is a Florida corporation with its principal place of business at 502 East Bridgers Avenue, Auburndale, Florida.

3. SunGard maintains offices and facilities in numerous cities across the United States.

**NEGOTIATIONS AND DISASTER RECOVERY AGREEMENT**

4. Prior to May 1999, SunGard contacted and entered into negotiations with Comcar in an effort to sell its disaster recovery services.

5. SunGard employees from SunGard's offices in Florida, Tennessee, and Georgia, participated in the negotiations with Comcar in Florida.

6. Prior to May 1999, SunGard represented to Comcar, among other things, that it provides a turn key solution for its customers, it is a total solutions provider, and it is an expert in the field of providing businesses with comprehensive disaster recovery services.

7. On or about May 13, 1999, SunGard employees traveled to Comcar's corporate offices in Auburndale, Florida to present SunGard's comprehensive recovery solutions proposal for Comcar's specific business recovery needs.

8. Both prior to and at this meeting, Comcar informed SunGard that it sought to develop a disaster recovery plan for its computer systems and that it lacked the expertise to do so on its own, thus Comcar was seeking disaster recovery expertise from SunGard to assist it in developing, testing, and maintaining a disaster recovery plan.

9. Both prior to and at this meeting, Comcar informed SunGard that Comcar employees would require assistance, such as training, guidance, and consulting, in order to prepare for SunGard's disaster recovery services.

10. Both prior to and at this meeting, Comcar informed SunGard that Comcar required the ability to restore connectivity with its remote locations.

11. At the Florida meeting, SunGard represented to Comcar that it agreed to provide the disaster recovery expertise and services sought by Comcar, which would include, among other things, that SunGard would create a disaster recovery plan and test plan for Comcar, train and guide Comcar employees in disaster recovery skills and planning, provide disaster recovery experts to assist and guide in testing, and provide the required equipment and supplies to restore

Comcar's computer systems and run its business in the event of a disaster, including the ability of Comcar to communicate with its remote locations.

12. In connection with negotiations in Florida, SunGard prepared informational documents specifically for Comcar. (See Exhibits A and B attached hereto.)

13. Both in these documents and orally, SunGard made a number of representations to Comcar, including among other things:

    a. SunGard represented that "We are the Disaster Recovery Experts." (Exhs. A, B.)

    b. "When investigating disaster recovery solutions, you must include SunGard Recovery Services, Inc." (Exh. A.)

    c. SunGard represented that it provides "Experience and Expertise" and "Comprehensive Technical Support." (Exh. A.)

    d. SunGard represented that it is a "Total Solutions Provider," which includes "Comprehensive Testing Services." (Exh. A.)

    e. SunGard represented that it is "Customer Driven" and provides "Remote Testing and Pre-Testing Services" and "Legendary Customer Service." (Exh. A.)

    f. SunGard represented that "[f]or nearly 20 years, we have been the industry's pioneer and developer of systems, processes, and solutions that help subscribers prepare and recover from unplanned business interruptions." (Exh. B.)

    g. SunGard represented that "[a] great deal of responsibility goes along with being a market leader. At the top of the list is the responsibility to:

- Develop solutions that address subscribers' continued growth and diversity among IT platforms, and

- Support these subscribers with complete solutions that are backed by an infrastructure that delivers continued access to the systems, support and services necessary for a successful recovery plan"

(Exh. B.)

      h.    "SunGard Recovery Services is committed solely to disaster recovery and business continuity planning." (Exh. B.)

      i.    SunGard represented that "Comprehensive Technical Support. SunGard contractually guarantees that support staff familiar with our subscriber's recovery configurations will be available to participate in all Tests and recoveries." (Exh. B.)

      j.    SunGard represented that it would provide Comcar with assistance and consulting in preparation for the transition to SunGard services.

14. On or about the date of the Florida meeting, May 13, 1999, SunGard provided Comcar representatives in Florida with a Disaster Recovery Services Agreement, Schedule A, and Addenda (collectively referred to as "Agreement") drafted by SunGard and stating "DATED May 13, 1999." (Exh. C attached hereto.)

15. SunGard represented to Comcar that all the services and disaster recovery expertise that SunGard agreed to provide to Comcar was included and/or covered by the terms of the Agreement.

16. SunGard further represented to Comcar that in order to secure the pricing for the services and disaster recovery expertise under the Agreement, Comcar had to execute the Agreement and provide it to SunGard by May 21, 1999.

17. Based upon the representations made by SunGard, Comcar, reasonably relying upon those representations, executed the Agreement in Florida and sent it to SunGard.

**AGREEMENT DATED MAY 13, 1999**

18. Paragraph A(3) of the Agreement states:

> **COMPREHENSIVE RECOVERY SUPPORT** . . . To facilitate Subscriber's use of the Recovery Services during a Disaster, SunGard's Support Staff shall assist Subscriber in pre-testing Subscriber's operating systems and communications circuits, as appropriate.

19. Paragraph A(4) of the Agreement states:

    a. Upon execution of this Agreement, SunGard will provide Subscriber with a computer based Workshop that is designed to provide Subscriber with an orientation to SunGard, general guidelines for defining reasonable Test objectives and recovery operations;

    b. Subscriber may use certain Recovery Services to test its disaster recovery capability ("Test");

    c. During each Test, SunGard's Support Staff shall provide reasonable supplies and support to Subscriber as needed, subject to availability;

    d. In order for SunGard to provide support to Subscriber for a scheduled Test, all Test plans must be provided to SunGard at least three weeks prior to the Test date; and

    e. Upon receipt of Subscriber's Test plan, SunGard will then assign a SunGard recovery specialist to review Subscriber's Test plan and act as project manager to coordinate Test support activities.

20. SunGard did not provide Comcar with a computer based Workshop as required under Paragraph A(4).

21. SunGard failed to provide assistance, such as training, guidance, and consulting, to Comcar employees in order to prepare Comcar for SunGard's disaster recovery services.

22. SunGard failed to create a disaster recovery plan or test plan for Comcar.

23. In the fall of 1999, a test was scheduled, and SunGard failed to assist Comcar in preparing a disaster recovery test plan for the scheduled test.

24. Prior to the test, Comcar, without the assistance, guidance, or support of SunGard, prepared and submitted testing paperwork to SunGard.

25. SunGard failed to assign a "SunGard recovery specialist to review Subscriber's Test plan and act as project manager to coordinate Test support activities."

26. During the test, SunGard failed to supply support staff with the technical expertise to provide guidance, support or assistance to Comcar in running the testing.

27. Furthermore, during the test, SunGard failed to provide the proper equipment and supplies for testing even though it was informed of Comcar's equipment needs prior to testing.

28. SunGard failed to provide the proper equipment and supplies to completely restore Comcar's computer systems.

29. Following the failure of this test, SunGard assured Comcar that failures in testing were unusual and requested that Comcar provide SunGard with another opportunity to run a disaster recovery test.

30. A second test took place, but again SunGard failed to assist Comcar in preparing a disaster recovery test plan, to assign a SunGard Recovery Specialist, to supply support staff with the technical expertise to provide guidance, support or assistance to Comcar in running the testing and failed to provide the proper equipment and supplies for testing and to completely restore Comcar's computer systems.

31. In the year 2000, various communications between Comcar and SunGard took place regarding issues involving SunGard's performance under the Agreement. Ultimately, SunGard refused to perform and on September 18, 2000 Comcar's counsel notified SunGard that Comcar considered SunGard's performance to be "totally unsatisfactory."

**SCHEDULE A AND ADDENDA TO AGREEMENT**

32. The Agreement included a "Schedule A" and certain Addenda. (Exh. C.)

33. Schedule A was drafted by SunGard and was represented to include all the equipment required for Comcar to completely restore its computer systems and run its business in the event of a disaster.

34. Schedule A did not provide for the equipment necessary for Comcar to completely restore its computer systems and run its business in the event of a disaster.

35. During negotiations, SunGard represented to Comcar that it would establish connectivity at a Destination Point SNN Node in Maitland, Florida.

36. An Addendum to the Agreement demonstrates that SunGard agreed to provide network services at "DS-1 Connectivity (Destination Point SNN Node - Maitland, Fl)" for an additional monthly fee of $1,400.00.

37. SunGard never provided network services at "DS-1 Connectivity (Destination Point SNN Node - Maitland, Fl)."

38. During negotiations, SunGard represented to Comcar that it would provide network and Internet access services.

39. An Addendum to the Agreement demonstrates that SunGard agreed to provide network and Internet access services for an additional monthly fee of $300.00.

40. SunGard never provided network and Internet access services.

41. During negotiations, SunGard represented to Comcar that it would provide disaster recovery services covering nine locations.

42. An Addendum to the Agreement demonstrates that SunGard agreed to provide disaster recovery services covering nine Comcar locations, which included six locations in Florida, one in Georgia, one in South Dakota, and one in Arkansas.

43. SunGard never provided disaster recovery services covering nine locations.

44. SunGard breached each of the above contractual obligations under the Agreement, including "Schedule A" and Addenda, with Comcar.

45. SunGard had a duty, in order to carry out the intended purpose of the Agreement and in accordance with an implied covenant of good faith and fair dealing, to provide Comcar with the expertise and services that it promised.

46. Comcar has been damaged as a result of SunGard's breaches of the Agreement.

WHEREFORE, Counterclaim Plaintiff Comcar demands judgment in its favor and against Counterclaim Defendant SunGard, together with interest, costs, attorneys' fees and any other relief that the Court deems appropriate.

## COUNT II
## UNJUST ENRICHMENT

47. Comcar incorporates by reference as if set forth at length herein paragraphs 1 through 46 of the Counterclaims.

48. SunGard received and accepted payments made by Comcar pursuant to the Agreement, but SunGard completely failed to perform its representations and promises under the Agreement as fully set forth above.

49. SunGard has been unjustly enriched as a result of receiving and accepting payments from Comcar.

50. It would be unconscionable and unjust for SunGard to retain the payments already made to it and to collect any additional amounts under the Agreement.

51. Comcar has been damaged as a result of SunGard's complete failure to perform its representations and promises under the Agreement.

WHEREFORE, Counterclaim Plaintiff Comcar demands judgment in its favor and against Counterclaim Defendant SunGard, together with interest, costs, attorneys' fees and any other relief that the Court deems appropriate.

## COUNT III
## FRAUD

52.     Comcar incorporates by reference as if set forth at length herein paragraphs 1 through 51 of the Counterclaims.

53.     During negotiations and in the Agreement, SunGard made a number of representations and promises, including, but not limited to, the representations and promises as fully set forth in the above paragraphs.

54.     As fully set forth above, the representations and promises made by SunGard were false and materially misleading.

55.     SunGard knew that its representations and promises were false and materially misleading when it made them and knew and intended that Comcar would rely on these representations and promises when entering into the Agreement and making payments under the Agreement.

56.     Comcar reasonably relied on the representations and promises when it entered into the Agreement and made payments to SunGard.

57.     Comcar has been damaged as a result of SunGard's fraudulent representations and promises.

WHEREFORE, Counterclaim Plaintiff Comcar demands judgment in its favor and against Counterclaim Defendant SunGard, together with interest, costs, attorneys' fees and any other relief that the Court deems appropriate.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

58. Comcar incorporates by reference as if set forth at length herein paragraphs 1 through 57 of the Counterclaims.

59. During negotiations and in the Agreement, SunGard made a number of representations and promises, including, but not limited to, the representations and promises as fully set forth in the above paragraphs.

60. As fully set forth above, the representations and promises made by SunGard were false and materially misleading.

61. SunGard knew, or should have known, that its representations and promises were false and materially misleading when it made them.

62. SunGard knew, or reasonably should have anticipated, that Comcar would rely on these representations and promises when entering into the Agreement and making payments under the Agreement.

63. Comcar reasonably relied on the representations and promises when it entered into the Agreement and made payments to SunGard.

64. Comcar has been damaged as a result of SunGard's false and materially misleading representations and promises.

WHEREFORE, Counterclaim Plaintiff Comcar demands judgment in its favor and against Counterclaim Defendant SunGard, together with interest, costs, attorneys' fees and any other relief that the Court deems appropriate.

## COUNT V
## FRAUDULENT INDUCEMENT

65. Comcar incorporates by reference as if set forth at length herein paragraphs 1 through 64 of the Counterclaims.

66. During negotiations and in the Agreement, SunGard made a number of representations and promises, including, but not limited to, the representations and promises as fully set forth in the above paragraphs.

67. As fully set forth above, the representations and promises made by SunGard were false and materially misleading.

68. SunGard knew that its representations and promises were false and materially misleading when it made them and SunGard knew and intended that Comcar would rely on these representations and promises when entering into the Agreement and making payments under the Agreement.

69. Comcar reasonably relied on the representations and promises when it entered into the Agreement and made payments to SunGard.

70. Comcar has been damaged as a result of SunGard's false and materially misleading representations and promises.

WHEREFORE, Counterclaim Plaintiff Comcar demands judgment in its favor and against Counterclaim Defendant SunGard, together with interest, costs, attorneys' fees and any other relief that the Court deems appropriate.

                                                _____

William J. O'Brien
Robert A. Klein
Susan L. Bucknum
Conrad O'Brien Gellman & Rohn, P.C
1515 Market Street
Sixteenth Floor
Philadelphia, PA 19102
215-864-9600

Attorneys for Defendant,
Comcar Industries, Inc.

DATED:       October 24, 2002

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendant's Answer, Affirmative Defenses and First Amended Counterclaims to Plaintiff's Complaint have been served by hand delivery on the following:

>James Smith, Esquire
>Blank, Rome, Comisky & McCauley, LLP
>One Logan Square
>Philadelphia, PA   19103

_____
Susan L. Bucknum

DATED:   October 24, 2002