IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNGARD RECOVERY SERVICES L.P., :     CIVIL ACTION
A limited partnership, formerly known as  :
SunGard Recovery Services Inc.,         :
                                  :
            Plaintiff,     :
                                  :     NO.  02-CV-4444
         v.                :
                                  :
COMCAR INDUSTRIES, INC.,         :
                                  :
            Defendant.     :

**DEFENDANT/COUNTERCLAIM PLAINTIFF COMCAR'S RESPONSE TO
PLAINTIFF/COUNTERCLAIM DEFENDANT SUNGARD'S MOTION TO DISMISS
COUNTS III, IV, AND V OF COMCAR'S FIRST AMENDED
COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

**I.**     **INTRODUCTION**

       SunGard's motion to dismiss Comcar's tort claims should be denied because it

erroneously relies on Pennsylvania law, rather than Florida law.  The choice of law provision of

the Agreement states "This Agreement shall be governed by substantive Pennsylvania law."

Courts in this Circuit have interpreted this language to apply only to a claim for breach of

contract, and not to govern the law applicable to tort claims.  Pursuant to a choice of law

analysis, Florida law applies to Comcar's Amended Counterclaims alleging fraud, fraudulent

inducement and negligent misrepresentation because there is a true conflict between Florida and

Pennsylvania law and Florida has the greater interest in having its law apply to Comcar's claims.

       Under Florida law, Comcar's claims are within the applicable four year statute of

limitation and are not barred by the parol evidence rule or the economic loss doctrine.

Moreover, Comcar's claims are based on SunGard's misrepresentations of past or present facts

that were made to induce Comcar to enter into the Agreement with SunGard, so Comcar has sufficiently pled its claims.

For all these reasons, which are detailed below, SunGard's motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND

SunGard is a limited partnership with its principal place of business located in Wayne, Pennsylvania, but SunGard maintains offices and facilities in numerous cities across the United States.[1]  Comcar is a Florida corporation with its principal place of business in Auburndale, Florida.

Prior to May 1999, SunGard contacted and entered into negotiations with Comcar in an effort to sell its disaster recovery services.  SunGard employees from SunGard's offices in Florida, Tennessee, and Georgia, participated in the negotiations with Comcar in Florida.

During negotiations, SunGard represented to Comcar, among other things, that it provides a turn key solution for its customers, it is a total solutions provider, and it is an expert in the field of providing businesses with comprehensive disaster recovery services.  On or about May 13, 1999, SunGard employees traveled to Comcar's corporate offices in Auburndale, Florida to present SunGard's comprehensive recovery solutions proposal for Comcar's specific business recovery needs.  Both prior to and at this meeting, Comcar informed SunGard that it sought to develop a disaster recovery plan for its computer systems and that it lacked the expertise to do so on its own, and thus was seeking disaster recovery expertise from SunGard to assist Comcar in developing, testing, and maintaining a disaster recovery plan.  Comcar also

---

[1] All facts are alleged in Comcar's Amended Counterclaims.

informed SunGard that Comcar employees would require assistance, such as training, guidance, and consulting, in order to prepare for SunGard's disaster recovery services. Comcar informed SunGard that Comcar required the ability to restore connectivity with its remote locations.

At the Florida meeting, SunGard represented to Comcar that it agreed to provide the disaster recovery expertise and services sought by Comcar, which would include, among other things, that SunGard would create a disaster recovery plan and test plan for Comcar, train and guide Comcar employees in disaster recovery skills and planning, provide disaster recovery experts to assist and guide in testing, and provide the required equipment and supplies to restore Comcar's computer systems and run its business in the event of a disaster, including the ability of Comcar to communicate with its remote locations.

In connection with negotiations in Florida, SunGard prepared informational documents specifically for Comcar. Both in these documents and orally, in Florida, SunGard made a number of representations to Comcar, including, among other things, representations regarding SunGard's experience, expertise, abilities in the field of disaster recovery services, and services covered under the Agreement.

On or about the date of the Florida meeting, May 13, 1999, SunGard provided Comcar representatives in Florida with a Disaster Recovery Services Agreement, Schedule A, and Addenda (collectively referred to as "Agreement") drafted by SunGard and stating "DATED May 13, 1999." SunGard represented to Comcar that all the services and disaster recovery expertise that SunGard agreed to provide to Comcar was included and/or covered by the terms of the Agreement. SunGard further represented to Comcar that in order to secure the pricing for the services and disaster recovery expertise under the Agreement, Comcar had to execute the

Agreement and provide it to SunGard by May 21, 1999. Based upon the representations made to Comcar by SunGard in Florida, Comcar, reasonably relying upon those representations, executed the Agreement in Florida.

Comcar has asserted counterclaims for fraud, fraudulent inducement and negligent misrepresentation against SunGard based upon the misrepresentations of its experience, expertise, ability to provide disaster recovery services, and services covered under the Agreement.

## III.    ARGUMENT

### A.    Standard For Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Counterclaim Defendant SunGard's motion to dismiss counts III (fraud), IV (negligent misrepresentation), and V (fraudulent inducement) cannot be granted unless the allegations, taken as true, fail to state any claim upon which relief can be granted. Murren v. American Natl. Can Co., 2000 WL 116067, *2 (E.D. Pa. Jan. 27, 2000); Florida Software Sys., Inc. v. Columbia Healthcare Corp., 46 F. Supp. 2d 1276, 1280 (M.D. Fla. 1999). "All well-pleaded factual allegations in the complaint are assumed to be true and are viewed in the light most favorable to the non-movant." Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589, 591 (E.D. Pa. 1999). "A complaint should be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id.

"In considering whether to dismiss a complaint for failing to state a claim upon which relief can be granted, the court may consider those facts alleged in the complaint as well as

matters of public record, orders, facts in the record and exhibits attached to the complaint." Murren, 2000 WL 116067, *2.  "The court must accept those facts as true."  Id.

"In addition to these expansive parameters, the threshold a plaintiff must meet to satisfy pleading requirements is exceedingly low; a court may dismiss a complaint only if plaintiff can prove no set of facts that would entitle him to relief."  Id.

When viewed by these standards, Counterclaim Defendant SunGard's motion to dismiss should be denied.

### B.    Counts III, IV, and V of Comcar's Amended Counterclaims State Valid Causes of Action Under Applicable Florida Law

SunGard's motion to dismiss fails to recognize Florida law applies to Comcar's tort claims.  Under Florida law Comcar sets forth valid, sufficient and cognizable claims.[2]

### 1.    The Choice of Law Provision of the Agreement Does Not Govern Comcar's Tort Claims

The choice of law provision of the Agreement states: "This Agreement shall be governed by substantive Pennsylvania law."  (Amended Counterclaims, Exh. C, § D10)).  Under well-established law in this Circuit, this provision does not encompass actions relating to the validity of the contract itself, but rather only governs a breach of contract claim.

Judge Bartle's opinion in Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp. 2d 589 (E.D. Pa. 1999) sits on all fours with this case.  In Coram, the plaintiff asserted claims for breach of contract, fraudulent inducement, and inducement by negligent misrepresentations.  94 F. Supp. 2d at 593.  The agreement at issue contained a choice of law

---

[2] As set forth herein, Comcar maintains that Florida law applies to its tort claims, however, even if, somehow, this Court determines that Pennsylvania law applies, Comcar's claims are also sufficient to withstand dismissal under Pennsylvania law.

provision stating: "This Agreement shall be governed by the laws of the State of Delaware."  Id.

at 593.  The court explained that this language meant that "only claims relating to the

construction and interpretation of the contract will be judged according to Delaware law."  Id.  It

further explained that the parties "did not provide more broadly that Delaware law would apply

to tortious conduct that led up to the execution of the contract or to other actions arising out of

their relationship.  Significantly, they did not refer to the matter of contract validity."  Id.

(citation omitted).  The court also opined that if the parties "wanted a more expansive choice of

law provision," they "could have inserted language that Delaware law governed 'all matters,

including, but not limited to, matters of validity, construction, effect or performance.'"  Id.

(quoting Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc., 795 F. Supp. 151, 157 (W.D.

Pa. 1992)).

       Based on the language of the parties' choice of law provision, the court concluded that

> Claims by Coram for fraudulent inducement and inducement by negligent
> misrepresentations emanate from events that occurred *before* the agreement even
> came into being and are separate and distinct from any breach of contract, which
> presupposes the existence of a valid agreement.  Thus, the fraud and negligent
> misrepresentation claims are not subject to the parties' contractual choice of law
> since the "fair import of the provision [does not] embrace[] all aspects of the legal
> relationship" between Coram and Aetna.

Id. at 593 (quoting Jiffy Lube Int'l Inc. v. Jiffy Lube of Pa, Inc., 848 F. Supp. 569, 576 (E.D. Pa.

1994)).

       Just as in Coram, the choice of law provision of the Agreement here states: "This

Agreement shall be governed by substantive Pennsylvania law."  This narrow language means

that Pennsylvania law applies to a breach of contract claim, but any claims of "tortious conduct

that led up to the execution of the contract or to other actions arising out of [SunGard's and Comcar's] relationship" are not subject to or governed by this choice of law provision.  Id.

SunGard cites to several choice of law cases attempting to support its contrary argument that Pennsylvania law governs Comcar's tort claims.  Each case cited by SunGard, however, actually supports Comcar's position that the choice of law provision does not govern its tort claims because in each case the choice of law provisions included broader language than merely "shall be governed by."

The opinion of Judge Yohn in Corestates Bank, N.A. v. Signet Bank, 1996 WL 482909 (E.D. Pa. Aug. 26, 1996) (cited in SunGard's Memorandum at 6), includes an extensive discussion on the interpretation of choice of law provisions.  The provision at issue in Corestates provided:  "This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed in accordance with, the internal laws of the Commonwealth of Virginia . . . , including all matters of construction, validity and performance."  1996 WL 482909, at *5 n.3 (emphasis added).

The Corestates court stated that, under this provision, Virginia law clearly applied to the contract claims, but the court engaged in further analysis regarding whether the provision also applied to the claims for fraud and negligent misrepresentation.  Id.  In so doing, the court explained that "other judges of this court have taken the position that a court should analyze the choice of law provision to determine whether, based on its narrowness or breadth, the parties intended it to encompass all elements of their association."  Id.  The court found that the provision was "sufficiently broad in scope to encompass Corestates' tort claims" because it "explicitly states that it encompasses matters of validity."  Id.

-7-

Equally broad language is found in <u>PTI Services, Inc. v. Quotron Systems, Inc.</u>, wherein the choice of law provision provided:

> This Agreement is made and entered into [in] the State of New York and shall be governed by the laws of that State.  The parties hereby consent and submit to the jurisdiction of the state courts of New York and the Federal courts located therein with respect to the adjudication of any matter arising hereunder.

1995 WL 241411, at *8 (E.D. Pa. April 19, 1995) (cited in SunGard's Memorandum  at 6-7). The court explained that "'adjudication of any matter' directly related to 'This Agreement'" included claims regarding the negotiation, signing, and interpretation of the contract.  <u>Id.</u>

Finally, in <u>In re Allegheny Int'l, Inc.</u>, the court found Pennsylvania law applied to the employee's claims for fraudulent inducement because "the contract says it is to be governed by, <u>and construed in accordance with</u>, the laws of the Commonwealth of Pennsylvania."  954 F.2d 167, 178 (3d Cir. 1992) (emphasis added) (cited in SunGard's Memorandum at 6).  Interestingly, the court in the <u>Corestates</u> decision, <u>supra</u>, discussed the <u>In re Allegheny</u> decision and explained that "[t]he word 'and' is the pivotal term because it indicates that the words 'governed by' envisioned claims other than those sounding in contract law, which are adequately covered by the language 'construed in accordance with.'" 1996 WL 482909, at *5 n.3.

SunGard cannot escape the fact that the choice of law provision here does not include the broad language discussed in these cases, but rather the narrow language construed in <u>Coram</u> to only apply to a breach of contract claim.  <u>See</u> <u>Stone Street Services, Inc. v. Daniels</u>, 2000 WL 1909373, at *3 n.6 (E.D. Pa. Dec. 29, 2000) ("Where an agreement does not refer to a matter of contract validity, the selection clause does not govern the action.").  Accordingly, the choice of law provision does not govern Comcar's tort claims.

**2.    Florida Law Governs Comcar's Tort Claims Under a Choice of Law Analysis**

Because the choice of law provision of the Agreement does not govern Comcar's tort claims, the Court is required to engage in a choice of law analysis to decide what law governs the tort claims. <u>Coram</u>, 94 F. Supp. 2d at 594.  Again, Judge Bartle's opinion in <u>Coram</u> provides the applicable choice of law analysis based on facts strikingly similar to those in this case.

In <u>Coram</u>, the court explained that it was required to engage in a choice of law analysis because "Pennsylvania and Delaware maintain different parol evidence rules."  The court recognized that "Pennsylvania's 'parol evidence rule bar[s] consideration of prior representations concerning matters covered in the written contract.'"  94 F. Supp. 2d at 592 (quoting <u>Dayhoff, Inc. v. H.J. Heinz, Co.</u>, 86 F.3d 1287, 1300 (3d Cir. 1996)).  And, on the other hand, Delaware's "parol evidence rule does not bar claims of either fraud in the inducement or fraud in the execution.  Delaware admits parol evidence to prove fraud in any form."  <u>Id.</u>

The court stated that "Pennsylvania has adopted a 'flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.'" <u>Id.</u> at 594 (quoting <u>Griffith v. United Air Lines, Inc.</u>, 203 A.2d 796, 805 (Pa. 1964)).  A choice of law analysis involves two steps.  The first is to determine whether there exists a false conflict "between the competing policies and interests of the relevant states."  <u>Id.</u>  "If a false conflict exists, [a court] will apply the law of the state whose interests are truly implicated by the particular cause of action."  <u>Id.</u>

If, however, a true conflict exists, a court is required to take the second step into a deeper choice of law analysis.  "A true conflict . . . exists when the interests of each state would be

impaired if the law of the other is given effect."  <u>Id.</u>  Analysis of a true conflict requires a court

to  "decide 'which state has the greater interest in the application of its law.'"  <u>Id.</u>

In <u>Coram</u>, the court determined that a true conflict existed between Delaware and

Pennsylvania law because:

> By admitting parol evidence to prove all fraud claims, Delaware has manifested
> an interest in protecting its citizens from the harmful consequences of an ill-
> gotten agreement.  In contrast, Pennsylvania has adopted a defendant-protecting
> rule which bars fraud in the inducement claims.

<u>Id.</u>

To decide which state's law applies, a court reviews "what contacts each state has with

the events giving rise to the claim."  <u>Id.</u>   The <u>Coram</u> court explained the analysis as follows:

> The contacts, which are to be measured qualitatively rather than quantitatively,
> include: the place where the injury occurred; the place where the conduct causing
> the injury occurred; the domicile, residence, place of business, and place of
> incorporation of the parties; and the place where the relationship between the
> parties is centered.  In fraud cases, the Restatement places particular importance
> on the "state where the false representations were made and received" if the
> "plaintiff's action in reliance took place" in the same state.

<u>Id.</u> (citations omitted).

In holding that Pennsylvania law applied to the tort claims, the <u>Coram</u> court found that

Delaware had "only one contact with the events giving rise to the lawsuit . . . Coram is

incorporated under its law."  <u>Id.</u>   The court opined that this contact was further diminished by

the fact that Coram's "principal place of business is in Colorado and that Coram chose to do

business with Aetna in Pennsylvania."  <u>Id.</u>  On the other hand, the court found that the contacts

to Pennsylvania were both numerous and substantial, including that Aetna is incorporated and

has its principal place of business in Pennsylvania; the negotiation and execution of the

agreement took place in Pennsylvania; and "[t]he place of the conduct causing the alleged wrong

-10-

and the center of the parties relationship were both in [Pennsylvania]." Id.  Accordingly, the
court held that Pennsylvania law applied to the claims for fraud in the inducement and negligent
misrepresentation.

The same choice of law analysis applies here, with the result being that Florida law
governs Comcar's tort claims.  There are several true conflicts between Florida and Pennsylvania
law on claims for fraudulent inducement and negligent misrepresentation.  First, under
Pennsylvania law the statute of limitations for fraud and negligent misrepresentation is two
years.  42 Pa. C.S.A. § 5524(7).  In Florida, the statute of limitations for fraud and negligence
actions is four years.  Fla. Stat. Ann. § 95.11(3)(a), (j); Lopez-Infante v. Union Central Life Ins.
Co., 809 So.2d 13, 15 (Fla. Dist. Ct. App. 2002) ("the statute of limitations for a fraud action is
four years" in Florida).  By instituting a four year statute of limitations, Florida has manifested
an interest in protecting its citizens with a longer period of time in which to bring claims for
fraud and negligence.  Pennsylvania's two year limit demonstrates its interest in providing a
shorter time period by which to bring these claims.

Second, Pennsylvania's parol evidence rule bars consideration of prior representations
concerning matters covered in a written and fully integrated contract.  Coram, 94 F. Supp. 2d at
592.  Conversely, Florida takes a different approach.  Under Florida law, the parol evidence rule
does not preclude admission of extrinsic evidence on claims for fraudulent inducement or
negligent misrepresentation, even with the presence of a merger clause.  Mejia v. Jurich, 781 So.
2d 1175, 1178 (Fla. Dist. Ct. App. 2001) ("The existence of a merger or integration clause,
which purports to make oral agreements not incorporated into the written contract unenforceable,
does not affect oral representations which are alleged to have fraudulently induced a person to

-11-

enter into the agreement."); <u>Noack v. Blue Cross and Blue Shield of Florida</u>, 742 So. 2d 433, 434 (Fla. Dist. Ct. App. 1999) ("Neither is the presence of a merger clause an impediment to a cause of action for fraud in the inducement"); <u>Baggett v. Electricians Local 915 Credit Union</u>, 620 So. 2d 784, 785-86 (Fla. Dist. Ct. App. 1993) ("While final agreements may not be contradicted by parol or extrinsic evidence, an exception is made in actions alleging negligent misrepresentation or, otherwise, fraud in the inducement. In such cases, the parol evidence rule does not preclude admission of extrinsic evidence."); <u>Wilson v. Equitable Life Assur. Soc'y</u>, 622 So. 2d 25, 27 (Fla. Dist. Ct. App. 1993) (discussing the "well-established rule that alleged fraudulent misrepresentations may be introduced into evidence to prove fraud notwithstanding a merger clause in a related contract."); <u>Lou Bachrodt Chevrolet, Inc. v. Savage</u>, 570 So. 2d 306, 308 (Fla. Dist. Ct. App. 1990) ("[A]n exception is made in an action alleging fraudulent inducement. In such a case, the parol evidence rule does not preclude admission of extrinsic evidence.").

As explained in <u>Coram</u>, "[b]y admitting parol evidence to prove all fraud claims, [Florida] has manifested an interest in protecting its citizens from the harmful consequences of an ill-gotten agreement." 94 F. Supp. 2d at 594. Accordingly, there exists a true conflict between Florida and Pennsylvania law on the application of the parol evidence rule to claims for fraudulent inducement and negligent misrepresentation.

Finally, although the Supreme Court of Pennsylvania has neither rejected nor adopted the economic loss doctrine, Pennsylvania intermediate appellate courts and federal courts applying Pennsylvania law have applied the doctrine to preclude claims for negligent misrepresentation. <u>Duquesne Light Co. v. Westinghouse Elec. Corp.</u>, 66 F.3d 604, 619 (3d Cir. 1995).

Unlike Pennsylvania, Florida courts have explicitly held that the economic loss doctrine does not bar actions based on fraudulent inducement or negligent misrepresentation.  Moransais v. Heathman, 744 So. 2d 973, 981 (Fla. 1999)[3] ("[W]e have declined to extend the economic loss rule to actions based on fraudulent inducement or negligent misrepresentation."); PK Ventures, Inc. v. Raymond James & Assoc., Inc., 690 So. 2d 1296, 1297 (Fla. 1997) (holding economic loss rule does not prevent a claim for fraudulent or negligent misrepresentation based on "descriptive marketing brochure of [a limerock] mine"); HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1997) (claim for fraudulent inducement not barred by economic loss rule); Woodson v. Martin, 685 So. 2d 1240, 1241 (Fla. 1996) (economic loss rule does not prevent a party from recovering damages for fraud in the inducement); Mejia, 781 So. 2d at 1178 ("when fraudulent misrepresentations in the formation of the contract are alleged, as in the case here, the economic loss rule does not bar recovery"); Noack, 742 So. 2d at 434 ("[O]ur court holds that '[f]raud in the inducement to make a contract is not barred by the economic loss rule.'").

Again, by explicitly holding that the economic loss doctrine does not bar actions based on fraudulent inducement or negligent misrepresentation, Florida has manifested its interest in protecting its citizens from fraud and their "right to justifiably rely on the truth of a defendant's factual representation in a situation where an intentional lie would result in loss to the plaintiff."

---

[3] In fact, the Supreme Court of Florida in the Moransais decision stated that "the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis."  744 So. 2d at 983 (footnote omitted).

HTP, Ltd., 685 So. 2d at 1240. Pennsylvania has adopted a defendant-protecting rule which purports to bar negligent misrepresentation claims.

Based on the above-stated law of the two states, true conflicts exist which requires a further interests analysis.

The factual background of this case demonstrates that Florida has the "greater interest in the application of its law." Coram, 94 F. Supp. 2d at 594. The only connection this case has with Pennsylvania is that SunGard has its principal place of business in Pennsylvania. The quality of this contact is significantly diminished by the fact that SunGard employees from SunGard's offices in Florida, Tennessee, and Georgia (ie. not Pennsylvania) participated in the negotiations with Comcar in Florida, and the fact that SunGard chose to do business with Comcar in Florida.

As set forth in Comcar's Amended Counterclaims, the contacts with Florida are both more numerous and substantial. Comcar is incorporated and has its principal place of business in Florida. The negotiations and execution of the contract took place in Florida. SunGard's misrepresentations were communicated to Comcar representatives in Florida, thus the conduct giving rise to the causes of action and the center of the parties relationship were both in Florida. Accordingly, Florida law controls Comcar's claims for fraudulent inducement and negligent misrepresentation. Coram, 94 F. Supp. 2d at 594.

### C.    Comcar Is Entitled to Relief under its Amended Counterclaims

Under the Florida law set forth above, Comcar's Amended Counterclaims for fraudulent inducement and negligent misrepresentation are adequately plead, within the statute of limitations, and not barred by the parol evidence rule or the economic loss doctrine.

Comcar's fraudulent inducement and negligent misrepresentation claims are based on SunGard's misrepresentations of past or present material fact and on promises made by SunGard without the intent to perform, and not, as SunGard contends, on promises of future action. "An action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." Mejia, 781 So. 2d at 1177. Moreover, "a promise may be actionable as fraud where it can be shown that the promissor had a specific intent not to perform the promise at the time the promise was made." Noack, 742 So. 2d at 434.

In Eastern Cement v. Halliburton Co., 600 So. 2d 469 (Fla. Dist. Ct. App. 1992), the buyer of cement pumping equipment brought a claim for fraudulent misrepresentation against the seller. The buyer alleged that "it was induced into entering the contract because of the seller's misrepresentation that 'it had extensive experience making similar or identical operations'." Eastern Cement, 600 So. 2d at 470. The court held that "a representation regarding experience consists of a statement of past or existing fact. A misrepresentation as to the extent of past experience can be a foundation for an action for fraud." Id. at 471.

As in Eastern Cement, SunGard made representations regarding its experience, expertise, and ability to provide a "turn key solution" for Comcar, that it is a total solutions provider, it is an expert in the field of providing businesses with comprehensive disaster recovery services, and services covered under the Agreement. Comcar disclosed to SunGard that it did not have the expertise to develop its own disaster recovery plan or train its employees to prepare for SunGard's disaster recovery services. SunGard represented that it had the capability and expertise to provide these services to Comcar. These representations constitute statements of

-15-

past or present material facts that were false and that induced Comcar to enter into the

Agreement with SunGard.  Accordingly, Comcar has adequately set forth its claims and is

entitled to relief on them.

Similarly, in <u>Noack</u> the plaintiff, Noack, alleged that Blue Cross had represented to him

that if he obtained a written release from "Tubbs" and moved his offices to a commercial setting,

he would "immediately become a general agent[] able to sell Blue Cross insurance."  742 So. 2d

at 435.  Noack further alleged that these representations were made to induce Noack not to file

suit against Blue Cross, were false when made, and when Noack complied with the conditions,

Blue Cross still withheld an agent contract.  <u>Id.</u>  The court held that these allegations "state[]

particular misrepresentations of fact," and the lower court erred in dismissing Noack's action for

fraud in the inducement.  <u>Id.</u>; <u>see also</u> <u>Florida Software Sys., Inc. v. Columbia Healthcare Corp.</u>,

46 F. Supp. 2d 1276, 1280 (M.D. Fla. 1999) (holding elements of fraudulent inducement were

pled with requisite specificity where plaintiff alleged that "(1) FSS breached its promise to

'perform Services using good business policies, practices, procedures, and internal controls', . . .

(2) FSS had neither the intent or the ability to perform the promises made in the Agreement; (3)

FSS knew the promises were false; (4) the false promises were made with the intent to induce

[plaintiff] to enter into the Agreement; and (5) [plaintiff] relied on the false promises and were

damaged as a result").

Under this applicable law and a review of Comcar's allegations set forth in its Amended Counterclaims, Comcar has sufficiently pled particular misrepresentations of facts and its claims should not be dismissed.[4]

### D.    Comcar's Amended Counterclaims Are Sufficient Under Pennsylvania Law

Even if the Court somehow determines that Pennsylvania law and not Florida law applies, which it should not, Comcar's tort claims are sufficiently pled under applicable Pennsylvania law.  SunGard contends that Comcar's claims are beyond the two year statute of limitations.  Beyond the fact that the statute of limitations is a defense and not a proper ground for a motion to dismiss, the face of the pleading reveals Comcar's claims were brought within Pennsylvania's statute of limitations period.  Comcar has averred that

> In the year 2000, various communications between Comcar and SunGard took place regarding issues involving SunGard's performance under the Agreement. Ultimately, SunGard refused to perform and on September 18, 2000 Comcar's counsel notified SunGard that Comcar considered SunGard's performance to be "totally unsatisfactory."

---

[4] Even if this Court applied Pennsylvania law, which it should not, Comcar's claims are not, as SunGard contends, based on promises to take future action.  The cases SunGard relies on are not analogous to the allegations set forth in Comcar's Amended Counterclaims, and they do not support SunGard's argument.  Bash v. Bell Telephone Co., 601 A.2d 825, 832 (Pa. Super. 2000) (alleging only that defendant "represented that it would perform pursuant to the terms of the . . . contract"); Shoemaker v. Commonwealth Bank, 700 A.2d 1003, 1006 (Pa. Super. 1997) (mortgagors' fraud claim based on bank's promise to obtain insurance on their home, **if they failed to do so**) (emphasis added)); Krause v. Great Lakes Holdings, Inc., 563 A.2d 1182, 1188 (Pa. Super. 1989) (alleging an oral representation by one party that it would assume a debt, **if the other party would** grant a three year moratorium on payments and forbear from immediate legal action on the debt (emphasis added)); Nissenbaum v. Farley, 110 A.2d 230, 233 (Pa. 1955) (defendant alleged that plaintiff fraudulently represented that certain equipment would be cleaned and tested prior to delivery, and court found this allegation insufficient because plaintiff answered the allegation by averring that the equipment was cleaned and tested prior to delivery). Compare United Products Corp. v. Admiral Tool & Mfg. Co., 122 F. Supp. 2d 560, 566 (E.D. Pa. 2000) (fraudulent misrepresentation about company's financial condition does not involve a future condition, intention, or promise).

(Amended Counterclaims ¶ 31).  SunGard's argument that the failed disaster recovery testing in the fall of 1999 started the limitations period is factually incorrect and legally wrong.  The Agreement at issue here is a services agreement.  Comcar endeavored to communicate with SunGard in an effort to resolve performance issues.  It was not until the period of time when Comcar sent its September 18, 2000 letter that Comcar learned of the existence of its claims for fraud and negligence.  Pickett v. American Ordnance Preservation Assoc., 60 F. Supp. 2d 450, 454 (E.D. Pa. 1999) ("Under Pennsylvania law, the 'discovery rule applies . . . when the underlying cause of action sounds in fraud.'").  For these reasons, Comcar's tort claims are timely.

SunGard's request to dismiss Comcar's tort claims based on the parol evidence rule is premature on a motion to dismiss because Comcar does not concede that the Agreement was intended to set forth its full agreement with SunGard.  Pilallis v. Electronic Data Sys. Corp., 1998 WL 211740, at *3 (E.D. Pa. April 28, 1998) ("The parol evidence rule is not applicable if the parties did not intend a written contract to set forth their full agreement.  This is true whether or not the contract contains an integration clause." (internal quotations omitted)).

Furthermore, Comcar's fraud and negligence claims are based on SunGard's representations regarding its experience, expertise, ability, and services covered under the Agreement.  Evidence of Comcar's reliance on those representations is not precluded under Pennsylvania law because those representations do not concern a subject specifically dealt with under the Agreement and thus, even under Pennsylvania's defendant-protecting parol evidence rule, Comcar is not prevented from asserting tort claims based on SunGard's prior or contemporaneous misrepresentations.  1726 Cherry Street Partnership v. Bell Atlantic Properties,

Inc., 653 A.2d 663, 670 (Pa. Super. 1995) (Pennsylvania's parol evidence rule only precludes

evidence of "alleged prior or contemporaneous oral representations or agreements" that concern

"a subject specifically dealt with" in an integrated written contract.  (emphasis added)).

Finally, with respect to the economic loss doctrine, Pennsylvania does not preclude

claims for fraudulent misrepresentations.  Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269,

1274 (M.D. Pa. 1990).

Consequently, Comcar's Amended Counterclaims in tort should not be dismissed even if,

somehow, the Court determines to apply Pennsylvania law.

IV.    **CONCLUSION**

For all of the reasons stated herein, Counterclaim Defendant SunGard's motion to

dismiss Counts III, IV, and V of Comcar's amended counterclaims in tort should be denied.


Respectfully submitted,



_____
William J. O'Brien
Robert A. Klein
Susan L. Bucknum
Conrad O'Brien Gellman & Rohn, P.C
1515 Market Street
Sixteenth Floor
Philadelphia, PA  19102
215-864-9600

Attorneys for Defendant/Counterclaim Plaintiff,
Comcar Industries, Inc.

DATED: December 20, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SUNGARD RECOVERY SERVICES L.P., :     CIVIL ACTION
A limited partnership, formerly known as   :
SunGard Recovery Services Inc.,       :
                                  :
            Plaintiff,      :
                                  :     NO.  02-CV-4444
          v.           :
                                  :
COMCAR INDUSTRIES, INC.,       :
                                  :
           Defendant.     :

## **ORDER**

      AND NOW, this _____ day of _____, 2001, upon consideration of

Counterclaim Defendant SunGard's Motion to Dismiss Counts III, IV, and V of Counterclaim

Plaintiff Comcar's Amended Counterclaims, and parties' arguments thereto, it is hereby

ORDERED that Counterclaim Defendant's Motion to Dismiss is DENIED in its entirety.

                         BY THE COURT:

                               _____
                                   Petrese B. Tucker, J.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing

**DEFENDANT/COUNTERCLAIM PLAINTIFF COMCAR'S RESPONSE TO**

**PLAINTIFF/COUNTERCLAIM DEFENDANT SUNGARD'S MOTION TO DISMISS**

**COUNTS III, IV, AND V OF COMCAR'S FIRST AMENDED COUNTERCLAIMS TO**

**PLAINTIFF'S COMPLAINT** has been served by hand-delivery on the following:


James Smith, Esquire
Blank, Rome, Comisky & McCauley, LLP
One Logan Square
Philadelphia, PA   19103



_____
Susan L. Bucknum

DATED:   December 20, 2002